(No. 14427.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM AIELLO, Plaintiff in Error.

*Opinion filed April 19, 1922.*

1. CRIMINAL LAW—*testimony of an accomplice should be acted upon with caution.* The testimony of an accomplice, uncorroborated, may be sufficient to warrant a conviction, but it is subject to suspicion and should be acted upon with caution, and the jury are warranted in convicting a defendant on such testimony only when they are satisfied, from all the circumstances in evidence, that the testimony is true.

2. SAME—*evidence must be sufficient to establish guilt beyond a reasonable doubt.* The jury are the judges of the weight of the evidence and the credibility of the witnesses, but a verdict of guilty must be based on evidence sufficient to establish guilt beyond a reasonable doubt, and if it is not, the Supreme Court is justified in reversing the judgment and remanding the cause for a new trial.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WILLIAM E. FAIN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, C. F. MORTIMER, State's Attorney, and JAMES B. SEARCY, (EDWARD PREE, and J. M. WELDON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Raymond Thompson, Emil Kozlowski, John Nesbitt and Sam Aiello were jointly indicted for breaking and entering the building of Edward Flaherty with intent to steal a safe of the value of $50 and its contents, $85 in money. They were arrested. Thompson and Kozlowski pleaded guilty and were sentenced and taken to the reformatory at Pontiac. Afterwards Aiello's trial came on. He pleaded not guilty. The jury found him guilty. The court overruled a motion for a new trial and sentenced him to confinement in the reformatory. He brings the record here for review.

At the time Aiello's trial came on Nesbitt entered a plea of guilty. No judgment was rendered on the plea and he became a witness for the State. His testimony was the only evidence to connect Aiello (hereafter called defendant) with the commission of the crime. Some time after midnight the drug store of Edward Flaherty, on North Fifth street, in Springfield, Illinois, was broken open and entered and a safe weighing about 500 pounds, containing $85 in currency, was carried to the alley in the rear of the store, about a hundred feet from the store. Flaherty's residence is on the same street as the store, about thirty feet distant, and both buildings face east. He testified that some time during the night he was aroused from sleep by someone and told there was somebody in the back end of the store. He went to the window, looked out, saw no persons but saw an object back of the store which he thought looked like an ice cream freezer. He went back to bed and later was called again and told there were some men back of his store. He looked out and saw some men carrying a heavy object he was sure was his safe. He immediately called the police station, then went down-stairs and saw the men when they had got the safe about to the alley. He yelled to them to drop it or he would shoot. They dropped it and disappeared, and the police arrived immediately after. He knew none of the men he saw with the safe. There were three or four of them. He was not certain there were four but was sure there were at least three.

Nesbitt testified he had known defendant about three years. He was also acquainted with Thompson and Kozlowski. The four of them met in the court house yard in Springfield about half-past twelve or one o'clock the night of May 19, 1921, and agreed to go to Flaherty's drug store to get some whisky. They went to the house where defendant lived, at Tenth street and Enos avenue, to get a truck. The truck was standing in the back yard. They all got in and defendant drove them to Fourth street and North

Grand avenue, about a block from the drug store. The truck was stopped there and Nesbitt, Thompson and Kozlowski got out and went to the drug store. Defendant remained with the truck. Nesbitt went to the alley in the rear of the store and Thompson and Kozlowski "jimmied" the front door. They found no whisky but reported there was a safe in the store and there ought to be money in it. They rolled the safe out to the back door, when a woman's voice called to them from up-stairs not to take the safe. The three of them left it and went to the truck, and they and defendant drove around in the north part of the city for an hour or so and then returned to the store. They carried the safe out to the alley and defendant and witness went after the truck. When they came back they saw a car standing at the door of the store and did not drive up to it but turned on Fourth street, drove to Rafter street, then to Fifth street, and there witness testified he left the truck. He did not know what had become of Thompson and Kozlowski and did not see any of the parties till the next day. On cross-examination he was asked if he had received any promises of leniency to induce him to plead guilty and testify for the State and denied any promises had been made to him. He testified the truck was an open top but he did not know the make. He testified the four of them carried the safe to the alley, and he never heard anyone threaten to shoot if they did not drop it. They got the safe to the alley before he and defendant left to go after the truck. He further testified it was very dark. "It was dark enough you could not see no distance." "When we were there it was dark and you could not see very far." Flaherty testified it was a bright moonlight night.

Frank J. Healy, sergeant of police, testified the police answered Flaherty's call, taking two cars. When they arrived they found the safe lying on the ground and helped get it back in the store. While there they saw a truck come from the east on North Grand avenue to Fourth

street and then turn south on Fourth street. As near as he could judge there was but one man in it, and he thought it had a top but did not pay much attention to it.

On behalf of defendant his brother Tony testified that he is married and owns and lives in his own property, on which he has a private garage. He owned a Commerce truck, capacity one and a half tons, no top, which he kept in the garage. The garage was kept locked and he alone had a key to it. The truck was not in running order and had been in the garage from about three days after Christmas until two months before the trial, when he pulled it to a shop to have it repaired. The trial took place in September, 1921. He testified he and his family owned a large truck, two and a half tons capacity. That truck had a top on it, but it was in storage in the garage of the Marmon people when the crime was committed. Defendant owned no truck. He lived with his father and mother at 1000 Enos avenue and no truck was kept there in May.

Harry Kutscher testified he operated a machine shop and did automobile repairing. About July 11 Tony Aiello's truck was pulled to his shop.

Joe Aiello, another brother of defendant, testified he conducted a soft drink parlor. Defendant worked for him nights until 11:30 or 12 o'clock from May 9 to May 28. Witness left his place of business early in the evening and defendant closed up about midnight, then went to his parents' home, where they both lived. He testified defendant came home May 19 and 20 about 12:30. Witness and defendant slept in the same bed and defendant did not go out after returning home.

Defendant testified he worked for his brother Joe from May 9 to 28. He closed up nights about twelve o'clock, then went straight home, and that he slept with his brother. He testified he did this the night of May 19 and 20 and did not leave the house after returning home. He never owned a truck but two trucks were owned by the family.

No truck of any kind was kept at the house at Enos avenue. The big truck was in storage with the Marmon people May 19 and 20, and the other one was at his brother's house, 1027 East Miller street. It was kept locked up in a garage and witness never had a key to it. That truck had no top to it. Witness further testified he did not meet the other men, who plead guilty to the crime, in the court house yard in Springfield the night of May 19 or 20 or at any other time and never had any talk with them about going to Flaherty's drug store to get whisky; that there was no truck at the house where he lived; that he never drove a truck to Flaherty's drug store and knew nothing about what happened there; that he and Nesbitt fell out about a girl in January; that he did not know Thompson but did know Kozlowski; that he had seen Thompson and Kozlowski in the jail in Springfield after they had been brought there from Pontiac to attend his trial; that Kozlowski called to him from the street, and he went to the jail to see him but did not talk about the case. He testified he made no threats against Kozlowski and did not talk to Thompson.

The foregoing was all the evidence heard at the trial and defendant contends it was not sufficient to warrant the verdict and judgment. There was very slight, if any, corroboration of Nesbitt's testimony. The only corroboration of his testimony claimed by the State is the testimony of the police officer that he saw a truck coming from the east on North Grand avenue and turn south on Fourth street, which is the last he saw of it. It is contended the truck the police officer saw must have been the truck driven by defendant and corroborates Nesbitt. We think it very questionable whether the police officer's testimony tends to corroborate Nesbitt. When the officer saw the truck it was at Fifth street going west on North Grand avenue and it proceeded west to Fourth street and turned south. Nesbitt testified when they got to Fourth street they saw a car at the store, which is on the corner of Fifth street, and they

then drove down Fourth street to Rafter, then turned east to Fifth street, where he left the truck, and defendant drove north on Fifth street toward and past the drug store. This leaves it extremely doubtful whether the truck seen by the police officer could have been driven by defendant if it was driven by him along the routes Nesbitt testified. We are of opinion the policeman's testimony is too uncertain to be considered as corroborating Nesbitt, and that the only evidence to sustain the conviction is the uncorroborated testimony of Nesbitt. The testimony of an accomplice, uncorroborated, may be sufficient to warrant a conviction, but it is subject to suspicion and should be acted on with caution. (*People* v. *Covitz,* 262 Ill. 514; *People* v. *Rosenberg,* 267 id. 202; *People* v. *Cotell,* 298 id. 207.) The court said in *People* v. *Rosenberg, supra,* the uncorroborated testimony of an accomplice, to justify a conviction, should satisfy of guilt beyond a reasonable doubt; that such testimony is liable to grave suspicion, and only when the jury are satisfied from such testimony and all the circumstances in evidence that it is true will they be warranted in convicting a defendant on such testimony. The circumstances under which Nesbitt testified tend to cast suspicion on his motives. Considered in connection with the testimony on behalf of defendant, we cannot regard it as sufficient to establish guilt beyond a reasonable doubt. While the jury are the judges of the weight of the evidence and the credibility of the witnesses, a verdict of guilty must be based on evidence sufficient to establish guilt beyond a reasonable doubt. *People* v. *Zammuto,* 280 Ill. 225; *People* v. *Fisher,* 295 id. 250; *Waters* v. *People,* 172 id. 367.

We are of opinion the court should have granted defendant a new trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*