(No. 15953.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE WIELAND, Plaintiff in Error.

*Opinion filed October 28, 1924.*

CRIMINAL LAW—*when conviction will be reversed because of insufficient evidence.* A judgment of conviction will not be reversed simply because the evidence is conflicting, but where it is apparent that the verdict is not based upon evidence proving the defendant's guilt beyond a reasonable doubt the judgment will be reversed and the cause remanded for a new trial.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. E. S. SMITH, Judge, presiding.

HAROLD J. BANDY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, T. I. McKNIGHT, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On February 24, 1923, Thomas H. Carmody and William S. Carmody owned and conducted a clothing store in Carrollton, Greene county. Early in the morning of that day burglars removed the iron bars which protected one of the windows in the store, the window was broken and through it they effected an entrance to the store. A large quantity of clothing was taken. The plaintiff in error, Theodore Wieland, was jointly indicted with Bernard Kretzer and Frank Bayha for the burglary and larceny at the September term, 1923, of the circuit court of Greene county. Bayha failed to appear at the trial and his recognizance was forfeited. Wieland and Kretzer were tried at the December term, 1923. Kretzer was acquitted, but the jury found Wieland guilty of burglary and larceny. His motion for a

new trial was overruled, judgment was entered on the verdict and he was sentenced to imprisonment in the Southern Illinois penitentiary. He brings the record here for review.

No complaint is made of the trial court's rulings in admitting or excluding evidence nor in giving or refusing instructions. The sole contention of the plaintiff in error is that the evidence is not sufficient to sustain the verdict and judgment. That is the only question to be determined here.

The evidence is wholly circumstantial. Thomas H. Carmody testified that on the night of February 23-24, 1923, the clothing store owned by himself and William S. Carmody was robbed; that when he arrived in the morning he found the east window on the north side of the building broken, the clothes racks and jewelry case rifled and the shirt and hosiery boxes emptied; that fifty-seven suits, eight overcoats, silk shirts, silk hosiery, one or two bathrobes and raincoats and two smoking jackets had disappeared; that a long screw-driver belonging to Pranger & Borlin and a flashlight belonging to Baltz Bros. had been left in the store; that the fair cash market value of the suits stolen was $1500; that six of the suits had been recovered at police headquarters in St. Louis, five of which were at the store and the sixth had been sold a few weeks before, and that the six suits recovered were probably worth $20 each. Fred Edwards, a farmer, testified that about half-past two o'clock in the morning of February 24, 1923, he saw an automobile, probably a Buick, come out of the alley adjoining the store, turn on the main street, proceed north to the first intersecting street and then turn east. Al Schmitz, a banker at Carrollton, testified that he kept a Ford sedan at Frech & Andrews' garage, in that city, and that on the morning after the burglary the car was missing, except that the rear cushion had been left in the garage. D. F. Mach, a deputy sheriff, testified that he found a Ford sedan in Madison the following day; that it lacked the rear cushion, and that he delivered the auto-

mobile to its owner, Al Schmitz. Edward E. Behnken, a detective of St. Louis, testified that he, accompanied by officers Borlinghaus and O'Connell, on March 3, 1923, at about 8:40 P. M., went to a soft drink parlor conducted by Wieland at 4359 South Broadway; that they announced they were police officers and searched those present for concealed weapons; that Kretzer was standing near the bar, leaning on a package; that the witness asked him what it contained, to which Kretzer replied that he did not know,—that the package was not his and that he had nothing to do with it; that the witness requested Kretzer to open the package, which he refused to do, but upon a second request he opened it and a suit of clothes was disclosed, of which Kretzer denied ownership; that the witness made a search of the premises and in the barn to the rear found several small rooms, some of which were open and others locked; that Wieland first denied that he had the key, but after the owner appeared, who said that Wieland had it, and after a threat by the witness that he would obtain a search warrant, Wieland produced several keys and unlocked the door of the room, in which were found pans containing home brew and alcohol and behind the door six suits of clothes; that Wieland first said that he did not know how the clothes got there and then that one Powers put them there, but that he did not know Powers nor where he could be found; that the clothes were brought into the soft drink parlor and examined and the name of Carmody Bros. was found in the inside pockets; that Kretzer said he had just entered the place to get a glass of root-beer but during the trial admitted he had gone there to buy a cheap suit of clothes; that the witness had Kretzer put the coat on and it fit him; that Bayha claimed to be a porter and cook for Wieland and that he slept in the barn which contained the room where the clothes were found; that the witness arrested Wieland, Kretzer and Bayha, but afterwards Bayha disappeared, and that Wieland still conducts his business in

St. Louis, but that no person by the name of John Powers could be found although search had been made for him. Officers Borlinghaus and O'Connell testified substantially the same as officer Behnken. The foregoing is a summary of the evidence offered in behalf of the People.

The plaintiff in error testified that he had resided in St. Louis all his life; that he was married and conducted a restaurant and soft drink parlor in that city; that he was at his place of business on the evening of February 23, 1923, until after eleven o'clock, when he returned home, and that he remained there until the following morning; that he was not at Carrollton or in the store of Carmody Bros. on the 23d or 24th of February, nor had he ever been in Carrollton until about a week after his arrest, when he was taken there by the authorities; that when the officers came to his place of business about fifteen persons were present, all of whom the officers searched for concealed weapons; that he did not know whose bundle it was that lay on the counter; that there is an old barn in the rear which contains certain rooms; that he did not use the barn but sub-let it; that Bayha, who was employed by him as a porter and slept in the barn, introduced two men named Smith and Powers, to whom the plaintiff in error first let space in the barn for a garage and later the room which the officers searched; that Bayha had the key to the room and the plaintiff in error had nothing in it when the officers came; that some of the rooms in the barn were locked and the officer asked for the keys; that plaintiff in error called the owner, who responded and opened his side; that the officer then asked for the key to a certain shed, and the plaintiff in error fetched his key ring from the cash register but did not have the proper key; that he obtained the key from Bayha and then opened the shed; that the suits of clothes were lying on the floor back of the door and he had never seen them before; that the liquor must have belonged to Smith and Powers; that Bayha left in a

few days and the witness has never seen him since; that
Smith and Powers never returned nor has he heard from
them; that he did not sell any clothing belonging to Car-
mody Bros. to Kretzer or to any other person, nor did he
receive any money from Kretzer for a suit of clothes; that
he did not know Bayha was selling the clothing and that he
had nothing to do with it. Bernard Kretzer, a co-defendant,
testified that on the evening in question he, with one Knable,
called at Wieland's saloon; that he had never been there
nor had he ever seen Wieland before; that he ordered
root-beer and a ham sandwich; that he did not talk to
Wieland about clothes nor buy any from him; that Knable
introduced Bayha to Kretzer; that Bayha sought to sell
Kretzer a suit of clothes, inquired about the size, said that
he thought he had one that would fit, repaired to the shed
and brought back a suit, for which Kretzer paid him $15;
that Kretzer asked whether the suit was stolen, to which
Bayha replied that he need not worry about it and that he
(Bayha) would refund the money if the suit did not fit;
that the suit was in the package on the bar in front of
Kretzer when the officers came and that Kretzer did not give
the plaintiff in error any money for it. Elizabeth Hefty,
the mother of the plaintiff in error, testified that her son
was married, and that he, with his wife and two children,
resided with her; that he slept in a room adjoining hers
and that he was home during the night the burglary was
committed. Edward Hagner, a teamster, testified that he
resided in St. Louis and was acquainted with Wieland; that
on the night of February 23, 1923, he was in Wieland's
establishment until after ten o'clock; that when he left Wie-
land was still there, and that he roomed up-stairs and had
seen Wieland every night for nearly a year prior to his ar-
rest. The foregoing is the substance of the evidence on the
trial in behalf of the plaintiff in error.

There is no direct proof of participation by the plain-
tiff in error in the burglary and larceny. A week after

the burglary had been committed three police officers of St. Louis entered his place of business in that city and searched those present for concealed weapons. In making this search they found Kretzer, a stranger to Wieland, standing at the bar, leaning on a package, which, when opened, was found to contain a suit of clothes bearing the name of Carmody Bros. Kretzer testified that Bayha asked him to buy a suit, inquired the size and said he thought he had one that would fit. Kretzer asked whether the suit had been stolen, whereupon Bayha assured him that he need not worry about it. Bayha went to the barn and returned with a suit of clothes. Kretzer paid him $15 for it, which, after the arrest, was refunded by Bayha. Wieland was the lessee of the first floor of the building in which he conducted his business and also of a part of the barn in the rear. He sub-let a portion of the barn. Bayha slept in the barn and was employed by Wieland as a porter, but his duties occupied only part of his time and he had leisure for other enterprises. Officer Behnken testified that Kretzer told him that he bought the suit of clothes from Bayha but that he paid Wieland for it. Both Kretzer and Wieland deny that Kretzer paid Wieland for the suit. Wieland, Kretzer and Bayha were arrested, but Bayha disappeared shortly afterwards and has never returned. The weight of the evidence, we believe, shows that Kretzer bought the suit of clothes from Bayha, and that the suits which were found behind the door of the room in the barn were in the custody of Bayha rather than of the plaintiff in error.

The place of business of Wieland in St. Louis, Missouri, is more than sixty miles distant from Carrollton, Illinois, where the burglary was committed. Fred Edwards saw an automobile, which he believed to be a Buick, emerge from the alley adjoining Carmody Bros.' store at about half-past two o'clock in the morning. Mach, the deputy sheriff, found a Ford sedan on the following day at Madison, which car belonged to and was recovered by Schmitz, the Carrollton

banker. No testimony was offered that any person had seen the plaintiff in error before, at or after the burglary in Carrollton or at any point between that city and St. Louis. He testified that he left his place of business on the night of February 23, 1923, between eleven and twelve o'clock; that he went to his home and remained there until the next morning, and that at the time of his arrest he had conducted the restaurant and soft drink parlor in St. Louis about nineteen months, prior to which he had been engaged in the ice and coal business. His mother, Elizabeth Hefty, testified that he was at home during the night the burglary was committed. While both of these witnesses are interested, their testimony is in a measure supported by that of Edward Hagner, who lived above Wieland's place of business, and who stated that he called there on the night in question, saw Wieland, and when he left, at about ten o'clock, Wieland was still in charge. It seems highly improbable· that the plaintiff in error could close his place of business shortly before midnight, depart for Carrollton, over sixty miles away, and after arriving there break into Frech & Andrews' garage and steal a Ford sedan, then take from Baltz Bros. a flashlight, follow it by the theft of a screw-driver from Pranger & Borlin, and finally steal from Carmody Bros.' store a large quantity of merchandise, as the State argues, by half-past two o'clock in the morning. To travel the required distance on a night in February and to break into four places of business, stealing something from each, would seem to require more time than the facts in the case allow.

A reviewing court should give due weight to the verdict of the jury and a judgment of conviction ought not to be reversed simply because the evidence is conflicting. It is the duty and province of the jury to consider the evidence, and where it is sufficient to warrant a conviction this court will not usurp the functions of the jury by substituting its judgment upon the weight and credibility of conflicting tes-

timony. (*People* v. *Zammuto*, 280 Ill. 225; *People* v. *Free-land*, 284 id. 190.)   But a verdict of guilty must be supported by evidence, and where it is apparent that the verdict is not based upon evidence proving the guilt of the accused it is the duty of the court to set aside the judgment based upon it.   *People* v. *Bolik*, 241 Ill. 394; *People* v. *Rischo*, 262 id. 596; *People* v. *Zammuto, supra; People* v. *Freeland, supra; People* v. *Aiello*, 302 Ill. 518.

We cannot regard the evidence in this record as sufficient to establish the guilt of the plaintiff in error beyond a reasonable doubt.   The trial court should have granted him a new trial.

The judgment of the circuit court of Greene county is therefore reversed and the cause remanded.

*Reversed and remanded.*