(No. 19132.—■■■■■■■■■)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH A. LEHNER, Plaintiff in Error.

*Opinion filed June 19, 1929.*

FRANK T. SHEEAN, and LOUIS A. NACK, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, F. J. CAMPBELL, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Ralph A. Lehner, has been twice convicted and sentenced to serve indeterminate terms in the penitentiary in the circuit court of Jo Daviess county on an indictment charging him with the larceny of five hogs, of the value of $184, belonging to Christopher A. Randecker. The first trial occurred in September, 1926, and the first judgment was reversed by this court and the cause remanded to the circuit court of said county for a new trial. (*People* v. *Lehner*, 326 Ill. 216.) The second trial was in July, 1928, in which the jury found the age of plaintiff in error to be thirty-seven years. He prosecutes this writ of error for a review of the record of the second trial.

We refer to the decision of this court above cited for a statement, in substance, of the evidentiary facts testified to by the witnesses for the State and for plaintiff in error, as

such facts are in the main the same facts given by the parties on the second trial. There was no evidence in the second trial offered by the People as to the general reputation of plaintiff in error in any particular or of any of the witnesses testifying for him. The father of plaintiff in error was not living when the second trial occurred, but the evidence given by him on the former trial was introduced by the defendant. One new evidentiary fact was established by the cross-examination of the State's witness Norman Gault by plaintiff in error, to the effect that six weeks before the second trial, and after the first trial, plaintiff in error re-paid to him the amount of money that Gault had paid to plaintiff in error as the purchase price of the hogs stolen from Randecker. Ralph Tiesch, the man from whom plaintiff in error testified in both trials he purchased the stolen hogs was not present at the first trial and had not then been apprehended. He had been arrested at the time of the second trial and was indicted for stealing the hogs in question and was present in court during the second trial, with his attorney. In the first trial plaintiff in error testified in person that after he was arrested he saw Tiesch, who again told him that he (Tiesch) bought the hogs from the farmer who owed him and that there was nothing wrong with "the deal;" that Tiesch then left plaintiff in error's home for the express purpose of bringing the man to plaintiff in error from whom he (Tiesch) had gotten the hogs, but that Tiesch never returned and had not been heard of or seen in that neighborhood up to the time of the first trial. The part of plaintiff in error's testimony just referred to was not given by him on the second trial. On cross-examination of plaintiff in error it was admitted by him that he told Gault, to whom he sold the hogs, and one Trunninger, that he raised the hogs in question, and admitted that he then lied to them. The evidence also showed that he had told another man that he purchased the hogs that he sold to Gault. Except as stated in this paragraph

the evidence both for the People and plaintiff in error in the second trial was substantially the same as in the first.

A supplemental bill of exceptions has been filed in which it is shown that plaintiff in error made application to the court for his release on probation and asked that the application be set for hearing and that an investigation be made by the probation officer of Jo Daviess county in accordance with the statute. The application for probation was supported by the affidavits of nineteen neighbors of plaintiff in error. The affidavits of these neighbors were, in substance, that they have known Ralph A. Lehner for a number of years and that he has never previously been convicted of a crime; that he bears a good reputation in the neighborhood where he lives; that he is at present engaged in farming and is the main support of his widowed mother, and that they believe that the interests of society will be subserved if he is released on probation. In his petition for probation it is recited that it was made on July 30, 1928, after motions for a new trial and in arrest of judgment were overruled. It was also proved on the trial of Lehner for larceny that he was an unmarried man.

Section 1 of the statute on the probation system (Laws of 1911, p. 277,) provides that all courts having criminal and *quasi* criminal jurisdiction shall have power to deal, in a manner in the act provided, with all offenders, whether adult or juvenile, brought within the jurisdiction of said courts, respectively, for any of the offenses thereinafter specified, one of which is larceny where the property taken or converted or the injury done does not exceed $200 in value. Section 2 of the act provides, in substance, that any defendant, adult or juvenile, who has never previously been convicted of any crime or misdemeanor, may, after a motion for a new trial has been overruled and nothing remains to be done by the court except to pronounce sentence, request the judge who presided at his trial to be admitted to release on probation according to the provisions of the

act. Section 3 of the act provides that an application for release on probation may, in the discretion of the court, be granted if it shall appear to the satisfaction of the court that there is both reasonable ground to expect that the defendant may be reformed and that the interests of society will be subserved; that if such application is granted, the judge granting the same shall thereupon enter an order continuing the cause for a period not exceeding one year in case the defendant is convicted of larceny of property taken not exceeding $200 in value. One of the duties of the probation officer under section 12 of the act is to investigate, when required by rule of court or by specific order, the case of any person who has invoked the provisions of the act, and as accurately and as fully as diligence will enable, to ascertain the personal characteristics, habits, associations and previous conduct of such person, the names, relationship, ages and conditions of those depending upon him for support, maintenance and education, and such other and further facts as may aid the court as well in determining the propriety of probation as in fixing the conditions thereof.

It is contended that the court erred in not ordering an investigation of plaintiff in error to be made by the probation officer of Jo Daviess county, as requested in his application for release on probation. One of the provisions of section 12 of the act on the probation system is, as above stated, that the probation officer, when required by rule of court or by specific order of the court, shall make the investigation. There is no showing in the record that there was any rule entered by the circuit court that the probation officer shall make any such investigation in this case or that a rule of that character had been entered by the court for the investigation of all such cases generally. By the provisions of section 3 of the probation system above stated it is discretionary with the court, in a case of the character above stated, to grant an application for release on probation if it shall appear to the satisfaction of the court that there is

reasonable ground to expect the defendant may be reformed and that the interests of society will be subserved. The court did not err in denying the motion.

It is further urged that the court erred in giving this instruction:

"The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the hogs mentioned in the indictment in this case were feloniously stolen, taken and carried away in Jo Daviess county, Illinois, as charged in the indictment, and that said hogs were then the personal property of said Christopher Randecker as charged in the indictment, and if you further believe from the evidence beyond a reasonable doubt, that soon or recently thereafter the said defendant had the exclusive possession of said hogs, this is sufficient to authorize the conviction of the said defendant unless the explanation offered by the said defendant, while a witness in this case, together with all of the other facts and circumstances in evidence are sufficient to create in the minds of the jury a reasonable doubt of the defendant's guilt."

This instruction correctly states propositions of law applicable to this case. It is substantially the same instruction that was approved by this court in *People* v. *Powloski,* 311 Ill. 284.

The court also gave another instruction of which complaint is made by plaintiff in error, to-wit:

"The court instructs the jury that one who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised, encouraged, aided or abetted the perpetration of the crime, is deemed in law an accessory, and is considered as principal, and may be punished accordingly."

This instruction states substantially the provisions of section 2 of division 2 of the Criminal Code. It is contended by plaintiff in error that the court erred in submitting this instruction to the jury, and the ground for his

contention is that there was no evidence in the record on which to base it. It is true that there is no direct evidence in the record on which to base this instruction. An inference is to be drawn from the record that the hogs were stolen by two or more persons, as it is unreasonable to conclude that one man could have stolen and carried the five hogs from Randecker's farm to plaintiff in error's premises in the manner shown by the record. But this was not sufficient to warrant the giving of this instruction. The court erred in giving it for the reasons contended by plaintiff in error, but we do not regard it as reversible error. The instruction is also objectionable because it contains a purely abstract proposition of law. (*People* v. *Forte,* 269 Ill. 505.) Instructions should not only be applicable to the facts of a case but they should apply the law therein stated to the facts, with a further requirement that the jury find, beyond a reasonable doubt, that the defendant was guilty of the acts that are stated in the instructions to constitute guilt, before they should make a finding of his guilt. Only four instructions were offered by the People in this case, all of which were read to the jury. Fifteen instructions were offered by plaintiff in error. Eleven of those were given and four were refused. An examination of the instructions given for plaintiff in error discloses that the jury was fully instructed on his theory of the law and that the court did not commit reversible error either in refusing to give the instructions for plaintiff in error or in giving for the People the erroneous instruction aforesaid.

It is finally contended by plaintiff in error that the evidence is not sufficient to support the verdict and for that reason the judgment of the court should be reversed. The only place in this record where it is indicated that a motion for a new trial was made and overruled is in the supplemental bill of exceptions which was signed by the court. The motion for a new trial, with the ruling of the court thereon, nowhere appears in either of the bills of excep-

tions. This court cannot for that reason pass upon the sufficiency of the evidence in this case. (*Call* v. *People,* 201 Ill. 499; *People* v. *Gabrys,* 329 id. 101.) An assignment of error as to the giving and refusing of instructions may be considered although the motion for a new trial is not contained in the bill of exceptions. A motion for a new trial is not properly a part of the common law record, and the copying of the motion for a new trial by the clerk of the court as part of the record, together with recitals as to the ruling of the court thereon, cannot have the effect to make such motion and recitals a part of the record, as such motion and such rulings can only be made a part of the record by a bill of exceptions signed by the court. If, however, a motion for a new trial, and the rulings of the court thereon, had been properly made a part of the record by bill of exceptions we would not be disposed to hold that the evidence was not sufficient to support the verdict of the jury. The evidence in the record clearly shows that the hogs in question were stolen either by Ralph Tiesch and sold by him to plaintiff in error, as contended by plaintiff in error, or they were stolen by plaintiff in error or by plaintiff in error and Tiesch. There is no good ground shown for the reversal of the judgment in this case. This court has many times held that it is not its duty to review the record in a criminal case to determine whether or not it is free from error. (*People* v. *Cardinelli,* 297 Ill. 116.) It is not the policy of this court to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury and the judgment of the court may have resulted from such error. *People* v. *Murphy,* 276 Ill. 304.

The judgment should be, and is, affirmed.

*Judgment affirmed.*