(No. 30368.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN SUSANEC, Plaintiff in Error.

*Opinion filed November 20, 1947.*

JOSEPH LUSTFIELD, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and MELVIN S. REMBE, both of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

John Susanec and Frank Valecek were jointly indicted in the criminal court of Cook County for the crime of robbery. The indictment consisted of three counts. The first charged the defendants with robbing James Benakis of a watch and that they were then and there armed with a certain pistol. The second charged robbery while armed with a dangerous weapon. The third count charged robbery but omitted the charge of the defendants being armed. On a trial by jury both defendants were found guilty as charged in the indictment and each was found to have been armed with a pistol. They were sentenced to the State penitentiary for a term not less than twenty nor more than thirty-five years. Susanec has sued out a writ of error in this court to review the record of his conviction.

The grounds urged for reversal are that the evidence does not establish guilt beyond a reasonable doubt, and that there was prejudicial error in the giving and refusing of certain instructions.

The evidence discloses that James Benakis, James Economos and James Tsoutis were engaged as partners in the restaurant and tavern business, operating the Presto restaurant at 2137 South Oak Park Avenue, Berwyn, Illinois. The building in which the restaurant and tavern was located is on the east side of the street with an alley to the south. It runs east and west the full length of the lot. The kitchen is at the extreme rear and east end of the building. A door leads out of the kitchen to a vestibule or hallway and from this hallway there are stairs leading to the basement and a door to the alley. At the time of the alleged offense the door was equipped with a Yale lock and a two-by-four bracket across the back of the door which was always kept locked. The tavern is separated from the restaurant and separate cash registers are used in carrying on the business. In the basement there are several stock rooms and a room

described as the "office." The door to this office is equipped with a lock and also a padlock. The partners had separate keys for each of these locks. A steel locker was kept in the office, which, among other things, contained money. There was also a table and chairs in the office and on the table Benakis testified he had an open-faced gold watch, which is the watch alleged to have been taken by the defendants.

On Sunday morning, May 5, 1946, about 2:00 A.M., James Tsoutis was behind the bar with a bartender assisting with the work and James Benakis was supervising the business both in the restaurant and the bar. At that time he was called to the kitchen and his attention was directed to the fact that the back door was open. Looking down the stairs to the basement he saw the two-by-four lying on the stairs, together with a crowbar. He immediately started down the stairs calling to one Cooper, a colored man employed by him whom he knew was in the basement. At this time a man with a gun came up to him and told him to come down. At the trial Benakis identified the defendant Frank Valecek as this man. Valecek took him to the office door and asked for the keys. Benakis told him he did not have any keys. Then another man with a mask and a gun appeared with Cooper. He put his hands in Benakis' pocket but took nothing out, although there was some money in his pocket, a watch in his vest and the keys to his office and locker in his rear pocket. Valecek started to open the office door with the crowbar and the other man put Benakis and Cooper in the icebox. Just before they were put into the icebox Benakis saw Valecek open the door and enter the office. About this time, Frank Risher, a customer, went downstairs and there saw a man with a hood on. He went upstairs, got a gun, and as the man with the hood was stepping into the alley, fired three shots at him. Risher then started into the alley after him but was struck on the head from the rear and knocked

down and was momentarily unconscious. As he raised himself he saw a man running in the alley and fired the remaining shots at him. Benakis and Cooper were released from the icebox about four or five minutes after they were put in.

Benakis testified that when he was released from the icebox he looked in the office and saw that his watch was not on the table although it had been there about a half hour before when he had been down in the office to get change for the restaurant and bar.

Neither of the defendants testified in their own behalf at the trial, but it is clear from the evidence that they were the parties engaged in the robbery. One Zatloukal, a cook, testified that after Risher fired the shots at the man with the hood, everybody rushed downstairs. Benakis testified that upon going into the alley he found a gun which he turned over to police. Officer Michaels testified that after questioning various witnesses at the restaurant he entered the alley and found a spot of blood, and that he found more further on and followed the trail through the alley east to Euclid Avenue and then south to Cermak Road and along the road on Cermak Road east to 6638 Cermak Road and that there on the street he found a pool of blood. James Houda testified that he was going home from a party, walking east on Cermak Road, and on Euclid Avenue he had crossed on the south side of Cermak Road and that when he was on the southeast corner of Cermak and Euclid, he heard some shots and saw a man running from the alley; that this man ran to where a car was parked, got in the back seat, and in a minute or so another man came running and got in the car and they drove west on Cermak Road; that he made a note of the last three numbers of the license plates of the car, went to the Berwyn police station and made a statement to the police.

Doctor Otto C. Koluvec testified that about 3:00 A.M. on the morning of the robbery he was called to the tele-

phone by the wife of John Susanec; that in about twenty-five minutes Frank Valecek, with the wife of the defendant, John Susanec, called for him at his home and drove him to 2636 W. Twenty-third Street, where he found John Susanec suffering from gunshot wounds; that after he administered morphine he called the police. Susanec was taken to the Bridewell Hospital and it was shown by the evidence that the bullet removed from his body had been fired from the gun Risher had used in shooting at the man fleeing from the tavern and restaurant.

The officers all testified to examining Valecek's automobile at his house and at the police station, and found a blood stain on the rear seat cover and a blood spot on the back of the front seat cover.

Benakis and Zatloukal identified Valecek as the man in the basement with the gun. The defendant Susanec was not identified by any of the witnesses, all of the evidence as to him being circumstantial. The watch was never recovered. It was not found on the defendants nor in Valecek's house when it was searched by the police.

It is contended by plaintiff in error that even though it be conceded that the evidence was sufficient to find that the defendants were the two men in the basement of the premises on the night of the alleged robbery, the State failed to prove beyond a reasonable doubt that anything was stolen, and that the defendants could only be guilty of an assault to commit robbery or an attempt to commit robbery. Plaintiff in error makes the contention that he was not identified but there is nothing in the evidence to support his position as to this. Risher, who obtained a pistol and fired at a man leaving the door of the restaurant to the alley and later fired at the same man as he ran down the alley about forty feet away, went to the Bridewell Hospital and saw Susanec, who had been shot, and when some clothing was held up for him to identify, he identified a brown jacket as being worn by the man he shot, as well as the hood he wore.

This, in addition to testimony that the bullet removed from the abdomen of the defendant had been fired by the gun used by Risher, would seem to establish definitely the identity of plaintiff in error beyond a reasonable doubt.

Plaintiff in error further contends that the State did not prove beyond a reasonable doubt that anything was stolen. To be specific, it is plaintiff in error's position that, admitting that defendant was one of the men in the basement on the night of the alleged robbery, the proof was insufficient to show beyond a reasonable doubt that anything had been taken, or, if anything was taken, there was a failure to prove that it was taken by the defendant. It is true that the evidence as to the defendant in this respect is circumstantial, and no eyewitness saw him take the watch alleged in the indictment to have been taken by force and intimidation, which is a necessary ingredient of the crime charged. The rule, however, with reference to sufficiency of circumstantial evidence is that it must be of a conclusive nature and tendency leading on a whole to a satisfactory conclusion and produce reasonable and moral certainty that the accused and no one else committed the crime. The guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People* v. *Yaunce,* 378 Ill. 307; *People* v. *Burgard,* 377 Ill. 322; *People* v. *Sorrells,* 293 Ill. 591.) While the jurors are judges of the weight of the evidence and the credibility of witnesses, their verdict of guilt must be based on evidence sufficient to establish such guilt beyond a reasonable doubt. *People* v. *Yaunce,* 378 Ill. 307; *People* v. *Burgard,* 377 Ill. 322; *People* v. *Jones,* 313 Ill. 335.; *People* v. *Kratz,* 311 Ill. 118; *People* v. *Aiello,* 302 Ill. 518.

It is true that this court will not hesitate to reverse a judgment based on circumstantial evidence where the evidence for the People does little more than raise a suspicion of the guilt of the accused, or where any one fact has been established by the evidence which is inconsistent with his

guilt, or where the circumstances can be explained upon a reasonable hypothesis consistent with the defendant's innocence. We cannot do so, however, where there is no controlling fact or circumstance from which we can say that the verdict of the jury is wrong. Circumstantial evidence is legal evidence and where it is of a strong and convincing character, such as to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, it is the duty of the jury to act upon it and find the defendant guilty, and such a verdict must be sustained by this court.

During the holdup in question, one of the robbers started to open the office door with a crowbar, while the other robber put Benakis, the proprietor, and a colored man by the name of Cooper in the icebox. Just before they were put in the icebox Benakis saw Valecek, one of the defendants, open the door and enter the office. Benakis testified that when he was released from the icebox he looked in the office and saw that his watch was not on the table, although it had been there about a half hour before when he had been down in the office to get change for the restaurant and bar. Under these circumstances, it is apparent the watch was taken in the robbery, and we hardly see how the jury could have arrived at any other conclusion. We do not think it was necessary for some eyewitness to testify that he saw the watch taken from the table by Valecek. In the case of *People* v. *Jett,* 361 Ill. 373, we held the evidence was sufficient to sustain a conviction for robbery although no one saw the money taken.

Plaintiff in error objected to the giving of instructions Nos. 10 and 11, for the State. The tenth instructed the jury that the goods or property taken need not be taken from the physical person of the victim and that it is sufficient if the goods or property was taken from the person or in the presence and under the immediate control of the person. The eleventh instructed the jury that if the indictment alleged and described the property taken and

that it was the property of the person assaulted and that it had a value, the actual value was immaterial in a charge of robbery.

These two instructions presented correct abstract propositions of law, but it is urged that these instructions informed the jury that the property was taken and that the value of it was immaterial, and it is contended that the two instructions should have stated that if the jury believes from the evidence beyond all reasonable doubt that a watch was taken, and that it was taken by the defendants, then it would not be necessary to prove the value or prove that it was taken from the physical person of the victim. As these instructions were given with other instructions, we hardly see how they could convey an impression to the jury that the court considered the taking as an established fact.

The third instruction given for the People charged the jury that before it could find the defendants guilty as charged in the indictment, it must be convinced from all the evidence in the case beyond all reasonable doubt, and that if it was not so convinced from the evidence beyond all reasonable doubt, it was its duty to find the defendants not guilty. It is apparent from an examination of all the instructions given in this case that the jury was fully instructed on this theory of the law and that the court did not commit reversible error in giving the instructions. We have repeatedly held that a particular instruction need not contain all the law either of the case or upon a given subject. It is sufficient if the series of instructions, considered as a whole, fully and fairly announces the law applicable to the theories of the People and of the defendant, respectively. *People* v. *Shelton,* 388 Ill. 56; *People* v. *DeRosa,* 378 Ill. 557.

It is also contended by plaintiff in error that the court erred in giving an instruction for the People on circumstantial evidence and refusing to give his instruction on the same subject. The instruction given, as far as it goes,

clearly states the law, but is not, of course, as complete as it should be. This court has many times held that it is not its duty to review the record in a criminal case to determine whether or not it is free from error. (*People v. Lehner,* 335 Ill. 424; *People v. Cardinelli,* 297 Ill. 116.) It is not the policy of this court to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury and the judgment of the court may have resulted from such error. *People v. Lehner,* 335 Ill. 424; *People v. Murphy,* 276 Ill. 304.

We have gone over this record carefully and are of the opinion that the judgment should be, and is, affirmed.

*Judgment affirmed.*