(No. 31416.—■

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARLYLE DAVIS, Plaintiff in Error.

*Opinion filed May 18, 1950.*

ROBERT E. KAVANAUGH, and GEORGE W. SPRENGER, both of Peoria, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and ERNEST G. UTTER, State's Attorney, of Rushville, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

On September 19, 1949, an indictment, including an habitual count, was returned in the circuit court of Schuyler County, against Carlyle Davis, plaintiff in error, hereinafter referred to as defendant, for burglary and larceny of a restaurant building belonging to Robert Hierman, Helen Hierman and Anna Hierman, located in Rushville.

The fourth count of the indictment charges the burglary of the aforesaid building and the taking of a safe, valued at $25. It further charged that at a term of the circuit court of McLean County, defendant was indicted on a charge of burglary and larceny alleged to have been committed in said county on August 15, 1946; that he was found guilty and was sentenced to the penitentiary for a term of not less than one nor more than three years; that the said defendant who was convicted and sentenced as aforesaid is the same. Carlyle Davis who is charged in this indictment.

Motion to quash the indictment was overruled and defendant was arraigned and entered a plea of not guilty. October 20, 1949, a motion for a continuance was presented with affidavits, which was overruled, and four days later the cause was called for trial. Defendant was found guilty by a jury of burglary and larceny and, after motions for a new trial and in arrest of judgment were overruled, he was sentenced to the Illinois State Penitentiary for a term of not less than five nor more than fifteen years.

The errors assigned are: (1) The court erred in not granting a continuance; (2) it was error to admit in evidence the incomplete certified copy of an alleged former conviction of the defendant; (3) improper admission of evidence; (4) improper instructions by the People were given to the jury; (5) defendant did not have a fair and impartial trial; and, (6) defendant was not proved guilty beyond a reasonable doubt.

It is first urged by the defendant that the court erred in overruling his motion for a continuance due to the physical condition of one of his attorneys. This presents the question as to whether or not there was an abuse of discretion in the trial court in denying such motion. It appears from the record that the indictment was returned on September 19, 1949, and that the defendant appeared with his counsel and moved to quash same. This motion being

overruled, defendant later appeared with his same attorney and moved to vacate the order overruling said motion. Thus, on two dates, September 23 and September 30, 1949, defendant was in court by his attorney of record. When the last motion was overruled September 30, 1949, the cause was set for trial on October 24, 1949. We find from the motion to quash, as filed, that it was submitted by both of the attorneys for the defendant. However, the court appearance on these motions was handled exclusively by the attorney who tried the case. October 20, 1949, the two attorneys jointly filed a motion for continuance in which it is represented that the attorney who tried the case was retained by the principal counsel and by the defendant's family, as legal counsel to expedite the handling of the pre-trial matters involving the defendant. This motion for continuance, which was overruled, was supported by an affidavit of the alleged principal counsel that he intended, and still intends, to participate in the trial of the defendant and to appear in his behalf as the trial attorney; that his present physical condition is such that the rigors and excitement of a criminal trial would be detrimental to his general well-being and state of health; that he has filed his motion in good faith in the full hope and expectation that a continuance may enable him to actively engage in the trial of the defendant.

The defendant cites the case of *People* v. *Dunham*, 334 Ill. 516, and contends that the facts outlined in that case are analogous to the facts appearing here. In the *Dunham case,* at page 521, we said, " No person accused of a serious crime should be forced to trial without a reasonable opportunity to employ counsel and properly prepare his defense. (*People* v. *Singer,* 288 Ill. 113.) Upon a proper showing that for want of time counsel has not been able to properly prepare the case, or that witnesses are not in attendance who might be found on time being given, or that the cause is not ready for trial for want of opportunity for preparation

owing to no fault of the accused, the court, in the exercise of a wise discretion, should postpone the trial to a later day in the term or continue the cause, if necessary."

There can be no disagreement as to the rule laid down in this case. However, the facts in the *Dunham case* are not comparable with the facts in the instant case, for the reason that the indictment there was returned on November 19, 1927, defendant was furnished with a copy on November 21, 1927, and the case was set for trial on November 28, 1927. The motion for continuance, which was supported by an affidavit, discloses that the defendant had engaged an attorney and was not able to retain other counsel; that the attorney was then engaged in the trial of a case and could give no time to the case of the defendant. In the instant case there were two lawyers and the one who had participated with all of the preliminaries was present at all times and proceeded throughout the trial. The trial was set on September 30 for October 24, and on October 20 the motion for a continuance was overruled, for the reason the affidavits were insufficient, which left defendant four days to prepare a new motion for continuance if he did not want to go to trial with the attorney who was in the case from its inception and was familiar with each and every step of the proceeding. It was pointed out by the trial court who overruled the motion, "There was nothing in Mr. Pratt's affidavit or the Doctor's affidavit that he was not going to be present or could not be present on account of his health on the day the case was set for trial. On that day if a new Motion or different Motion had been made to continue this case, Mr. Pratt had not been present and had filed an Affidavit giving the Court the facts, the action of the Court might have been different, I don't know. I would certainly have given it consideration if I felt under the circumstances he couldn't well go to trial I would have given him the benefit of it, but that wasn't done."

In support of their contention that the trial court did not err in overruling the motion for a continuance, the People cite the case of *People* v. *Martin,* 376 Ill. 569, where the court said, "As continuances from December 5 had been granted, the jury had been selected, and the record shows defendant's counsel was not overmatched in the trial, it was not error to overrule the motion for continuance." After having carefully gone over this record and the motion pertaining to the question of a continuance, we are unable to say the judge abused his discretion in denying such motion, or that the defendant was not given an adequate defense.

It is contended that the trial court erred in giving erroneous instructions. Instructions 3 and 4, on behalf of the People, attempted to define reasonable doubt. Similar instructions have been condemned by this court in many cases. (*People* v. *Casey,* 350 Ill. 522; *People* v. *Schuele,* 326 Ill. 366; *People* v. *Rogers,* 324 Ill. 224.) As we said in the *Schuele case,* reasonable doubt needs no definition and it is erroneous to give instructions resulting in an elaboration of it. We pointed out in the case of *People* v. *Baker,* 365 Ill. 328, in commenting on the giving of such instructions, "Such error has not, however, been held to require a reversal." We held in *People* v. *Casey,* 350 Ill. 522, pertaining to an instruction on reasonable doubt, "This court has many times stated that 'reasonable doubt' needs no definition and that cases may well arise where an involved instruction as to reasonable doubt would result in prejudicial error. This instruction should not have been given." Here the instructions on reasonable doubt should not have been given, but we are of the opinion that this is not such a case that the instructions resulted in prejudicial error.

The defendant urges he was denied due process of law in that in the examination of one of the witnesses he was

not protected by his counsel, and that a majority of the questions asked by the prosecutor were misleading and of a dangerous nature and should have been objected to. He fails to point out in his argument what the questions were and why they were misleading and of a dangerous nature, but seems to infer that if another attorney had been in the case he would have made proper objection. We have yet to find the perfect case where it cannot be pointed out that in the heat of trial some evidence reaches the jury which, if an objection had been made, would not have been permitted. We held, in the case of *People* v. *White,* 338 Ill. 33, "It is not the purpose of a reviewing court to determine in a criminal case whether the record is perfect, but to determine whether the accused has had a fair trial and whether or not his conviction is based upon competent evidence establishing his guilt beyond a reasonable doubt." We are of the opinion that the evidence as pointed out was not such as to constitute prejudicial error.

Defendant contends it was error for the court to admit into evidence the incomplete record of a former conviction. The evidence was tendered for the purpose of proving the habitual criminal charge as made in count 4 of the indictment. It is urged prejudicial error was committed in the admission of this record in evidence for the reason it was incomplete and therefore insufficient to support a conviction under the habitual count. At the time of the introduction of the record, defendant made only a general objection. Not having raised the specific objection, defendant must be held to have waived it. (*People* v. *Jennings,* 298 Ill. 286.) Further, we are of the opinion this evidence, evidently not acted upon by the jury, was not such as to constitute prejudicial error. If such were the case in every instance where insufficient proof is made to sustain an habitual charge, it would be prejudicial error to convict one of the crime charged in other counts of the

indictment. We pointed out in the case of *People* v. *Lawrence,* 390 Ill. 499, various phases of the situation as to the effect of proof of former charges.

The next contention of the defendant is that he was not proved guilty by legally competent evidence beyond a reasonable doubt, and he urges the testimony of an accomplice should be received with great caution. There can be no question about this rule of law, and we have many times held that while the testimony of an accomplice is of doubtful integrity and must be received with suspicion and considered with caution, nevertheless a conviction may be based on such testimony, uncorroborated, if it is of such a character as to convince the jury beyond a reasonable doubt of the guilt of the accused. (*People* v. *Rudnicki,* 394 Ill. 351; *People* v. *Johnston,* 382 Ill. 233; *People* v. *Moran,* 378 Ill. 461; *People* v. *Dabbs,* 370 Ill. 378; *People* v. *Erickson,* 338 Ill. 542.) Aside from the fact that it is the province of the jury, in the first instance, to weigh the evidence and determine the facts, we find considerable corroboration supporting the testimony of the accomplice in this case.

Richard Proz, who was indicted for the same offense under a separate indictment, testified that he and the defendant left the defendant's home a little after midnight on July 21 and the early morning of July 22, 1949, and drove to Rushville; that a little after two o'clock in the morning they arrived in Rushville, and the defendant directed him and they parked the car by some school on a side street and went to a restaurant; that defendant went around the side and got in a window of the restaurant, opened the door for him and they tried to break open a safe; that, not being able to do so, they backed their car up to the restaurant and placed the safe in the back end of the car and drove toward Peoria until they had an accident, when their car skidded on a curve; that they got out and

tried to roll the safe across a field; that they used some tools to get the safe open; that he had never been arrested before; that defendant told him where the money was kept in a drawer and that defendant had learned this when he had visited an uncle a week before that time.

Bernice Williamson, called as a witness for the People, testified that she saw two men dragging a heavy object across the field after an automobile accident near her home in the latter part of July, 1949; that it was around 4:30 in the morning and that the men were rather tall.

William Humphrey testified that defendant came to his home about five o'clock in the morning sometime in the month of July and changed his shirt.

Ernest Andrea, sheriff of Schuyler County, testified that the defendant admitted he assisted in rolling the safe across the field; that the defendant told him he left Peoria with Proz on July 21, came to Lewistown, went from Lewistown to Havana and on to Rushville.

It would seem from this that there was ample corroboration as to the testimony of the accomplice, Proz. We have examined the record in this case as to the evidence offered, and in addition to the testimony of the accomplice, there were other circumstances tending to prove the participation of the defendant in the alleged offense. The rule in criminal cases is that it is the province of the jury to determine the credibility of the witnesses and to weigh their testimony, and unless it can be said, after a careful perusal of the evidence, that the proof is so unsatisfactory as to justify the court in entertaining a reasonable doubt as to the defendant's guilt, this court will not reverse a judgment of conviction on the evidence. (*People* v. *Lanie,* 378 Ill. 320; *People* v. *Price,* 371 Ill. 137.) This court has also many times held that it is not its duty to review the record in a criminal case to determine whether or not it is free from error. (*People* v. *Susanec,* 398 Ill. 507; *People* v. *Lehner,* 335

Ill. 424; *People* v. *Cardinelli,* 297 Ill. 116.) It is not the policy of this court to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury and the judgment of the court may have resulted from such error. *People* v. *Susanec,* 398 Ill. 507; *People* v. *Lehner,* 335 Ill. 424; *People* v. *Murphy,* 276 Ill. 304.

We have gone over this record carefully and are of the opinion that the judgment should be, and it is, affirmed.

*Judgment affirmed.*