(No. 19484.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HUGH HASKINS, Plaintiff in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 10, 1929.*

GEORGE W. SPRENGER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, R. C. RICE, State's Attorney, and JOEL C. FITCH, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Charles Branum, and Mabel, his wife, was indicted in the circuit court of Knox county of the crime of accessory after the fact to the crime of assault with a deadly weapon with intent to kill and murder. The indictment charged that on the 7th day of October, 1928, one Clifford Divers assaulted one William Thierry with a knife with intent to murder said Thierry, and that plaintiff in error and the other two named defendants, not standing in the relation of husband, wife, parent, child, brother or sister to Clifford Divers, and having full knowledge that Divers had committed the felony charged in the indictment, did on the same day conceal the crime from the magistrates of Knox county and harbored said Divers and assisted him to escape. All of the accused were found guilty. Plaintiff in error was fined $500 and sentenced to the penitentiary for

not less than one nor more than two years. He brings the cause here for review.

The evidence discloses that on the evening of October 6, 1928, at the home of one Ollie Thierry, on Monmouth avenue, in Galesburg, William Thierry received cuts and a gunshot wound and died. The house of Ollie Thierry consists of three rooms, and on the evening of October 6 a social gathering was in progress there, attended by some twenty or thirty people. During the evening William Thierry and Clifford Divers, for reasons not shown by the record, engaged in a fist fight. Clifford Divers was knocked down. They were separated by some of those present. Five minutes later Divers' brother Carl appeared and suggested to Clifford Divers that they go home. They started out of the kitchen by way of the back door. William Thierry was standing near the door. As they were leaving someone asked Divers if he was bleeding, and he answered, "No; if a man bleed me I will kill him." He had in his hand at that time an open knife. As he passed William Thierry he said to him, "I will see you in the morning," to which Thierry replied, "You can see me now," whereupon a fight was started in which Thierry was cut about the face and neck, receiving a cut about an inch below his left ear. About this time Carl Thierry drew a revolver and started shooting. Both Ollie Thierry and William Thierry were struck by bullets. Both Carl and Clifford Divers then left the house. Assistance was called for William Thierry and he was removed to the hospital but died on the way. The evidence does not disclose whether his death was due to the knife cut or the gunshot wound.

There is little dispute in the evidence up to this point. Charles Branum, and Mabel, his wife, were guests at the party. The State's evidence is that Mabel was in the kitchen when the fight first started and she inquired for her husband, Charles; that a few minutes before the cutting she came into the room and asked, "Where is Charlie

and Carl Divers? They got a gun;" and that she found her husband and together they left the house after the first fight but before the cutting took place. They went to the home of plaintiff in error, who lived a short distance from the Thierry home. They testified that they had gone but a short distance from the Thierry house when they heard a noise like a shot or the backfire of an automobile, and that on their way to the Haskins house someone drove up behind them and told them to tell Haskins that Carl Divers wanted to see him. The police officers and sheriff testified that in a statement made by the Branums they said that a party came up behind them and told them to "tell Hugh that Cliff is in trouble and wants to see him." Their testimony was that they arrived at Haskins' house at about half-past two o'clock in the morning. They gave as a reason for their visit that they wanted to collect some four or five dollars which Haskins owed Mrs. Branum for laundry work. They also testified that they asked Haskins if they could use his telephone to call a cab, as Mrs. Branum did not feel like walking home; that Haskins offered to take them home, and they got into his car and drove away and ran out of gas, and that after getting more gas they met a taxicab driver named Nelson, who told Haskins a man wanted to see him at Haskins' house. The evidence also is that a short time after the fight Nelson took Clifford Divers to the home of Haskins; that Haskins was not at home, and Divers remained there and told Nelson to go down-town and find Haskins and tell him to come home. Nelson testified that he found Haskins and delivered the message. When Haskins reached his home after Nelson had delivered this message he found Clifford Divers there. Haskins, Divers and the Branums started in Haskins' car for Iowa. They went first to Ft. Madison and then to Ottumwa, Iowa, arriving at the latter place about eleven o'clock Sunday morning. They left Divers at the home of a colored man named Rabbit, in Ottumwa. According to

the testimony of Haskins and the Branums, Divers asked Haskins to pay him what money he owed him, which he did, and Divers then told them that if anyone wanted to know where he was, not to tell them but to tell them he was in Decatur or Bloomington. Haskins and the Branums returned to Galesburg about four or five o'clock Sunday afternoon.

In a conversation with the sheriff, Frank Hooker, and Harry Bragg, his deputy, shortly after Haskins' return, he stated that about two o'clock that morning the Branums came to his house and told him that Carl and Cliff were in trouble and that Carl wanted Haskins to meet him in Decatur; that they got out his car, and he, with the Branums, started for Decatur and ran out of gas, and after sending for enough gas to get them to the gasoline station, where they replenished the fuel supply, drove to Decatur, where they stayed about an hour and left. Bragg testified that on the next day he had another conversation with Haskins before the latter was arrested; that he (Bragg) asked Haskins where he took Clifford Divers; that Haskins in turn asked Bragg what he knew, and Bragg stated that he knew Haskins had hauled Divers away. Haskins then told Bragg that he had taken Divers to Ottumwa, Iowa, and left him with a colored man named Rabbit, on Smoky Row. In response to Bragg's inquiry as to why he did not tell him the truth Sunday evening, Haskins replied that he did not know, but he did not feel he owed the officers anything.

It appears by the testimony of the witness Henry Johnson, who was one of the guests at the Thierry home on the night of the assault, that when this cause was on trial Haskins subpœnaed him as a witness and asked him if he knew anything about how Carl and Clifford got away; that Johnson told him he did not but he had seen the fight. He then asked Johnson how long before the fighting it was that he last saw Mabel and Charlie Branum. The witness replied, "Four or five minutes," and that Haskins then said:

"If you say as much as twenty minutes I will make it all right with you; you needn't worry and it will help me."

According to the testimony of the police officers and sheriff the Branums made conflicting statements with reference to their conduct following their presence at the party, Mrs. Branum stating at first that they had gone to Bloomington with Cliff Divers and let him out near the railroad station, and Branum giving Decatur as the place of their visit, both later acknowledging to the sheriff that they took Divers to Ottumwa, Iowa. The Branums testified that they knew that there was a fight but testified they did not hear the shooting and did not know that Clifford Divers had cut anybody; that they did not find this out until after they returned from Ottumwa, Iowa. In their testimony Haskins and the Branums admitted that they drove Divers to Ottumwa, Iowa, but all of them deny that they had any knowledge or intimation that Divers had committed any crime. They denied making the statements testified to by the officers.

Plaintiff in error argues that the essential elements of the crime of accessory were not proved in this case. It is said, first, that the assault by Clifford Divers with a knife on the person of William Thierry, resulting in serious injury, was not proved beyond a reasonable doubt. It seems clear from the statement of the evidence hereinbefore given, that there could be no reasonable doubt that Clifford Divers engaged in an assault upon William Thierry with a knife, and that he at least seriously wounded him by a cut about an inch below the ear and elsewhere.

Counsel argue that this was but a brawl, in which Divers was entitled to defend himself. The only evidence in the record as to what occurred shows that prior to the assault Divers was seen with an open knife in his hand; that as he was going out of the door he told Thierry he would see him in the morning, to which Thierry replied,

"You can see me now." There is nothing to indicate that this knife had been opened ready for use in necessary self-defense or that Divers might not have passed out of the house without any further trouble. The location of the wound was in the region of the jugular vein and was evidently a serious one, though, as we have seen, the record does not show whether it was the cause of his death. Thierry was not armed, and the record does not disclose any difference in size or strength of the men, except that it does show that in the first fist fight Divers was knocked down by Thierry.

Necessary elements of an assault with a dangerous weapon with intent to commit murder are the use of a dangerous weapon by which a mortal wound might be inflicted, and the intent. The latter must be proved, but it is not necessary that it be shown by direct evidence or to prove an express intention. (*Crosby* v. *People,* 137 Ill. 325; *Weaver* v. *People,* 132 id. 536.) If one deliberately assault another with a dangerous weapon likely to produce death, and the assault be such that if death result the crime would be murder, then express proof of the intent to murder is not required. (*Crowell* v. *People,* 190 Ill. 508; *Crosby* v. *People, supra; Weaver* v. *People, supra.*) In this case Divers used a knife, seriously cutting Thierry in the region of the jugular vein.

It is also urged that as Thierry was in a fight with Divers and had previously knocked him down Thierry was not in the peace of the people, and that Divers, therefore, in cutting Thierry did not commit the crime charged in the indictment, and this being true, no crime was chargeable against plaintiff in error for assisting Divers to escape. The indictment charged that Thierry at the time of the cutting was in the peace of the people. These words, when used in an indictment of this character, have been construed by this court to mean that the deceased had done nothing

to forfeit his right to live. (*People* v. *Fricano,* 302 Ill. 287.) The proof of the crime of assault with intent to commit murder was sufficient.

Another essential element of the crime charged against plaintiff in error is, that he knew or believed at the time he concealed the crime of Divers and harbored and assisted him to escape that Divers had committed the crime charged in the indictment. The Branums, who went directly to the home of Haskins, were at Thierry's house when the first fight started. They testified that after they left they heard something that sounded like shooting or the backfiring of an automobile, and that they left just before the cutting occurred. They first stated to the officers that someone came up to them after they had left the house and told them to tell Haskins that Cliff Divers was in trouble and wanted to see him. They testified that this party told them that Carl Divers was in trouble and wanted to see Haskins. These statements, and those of Haskins of a like character, together with the testimony of Nelson, the taxicab driver, that he took Cliff Divers to the home of Haskins, and the fact admitted by all of the accused that they thereafter took Haskins to Ottumwa, Iowa, and left him there, justified the jury in believing that plaintiff in error knew that Divers had committed a crime at the time they assisted him to escape. Such knowledge may be inferred from facts and circumstances proved by the evidence' if those facts and circumstances warrant that inference. *Dent* v. *State,* 43 Tex. Crim. 136, 65 S. W. 627; *Tally* v. *Commonwealth,* 13 Bush, (Ky.) 142; 1 Hale's Pleas of the Crown, 622.

It is also argued that while the indictment charged that the accused did not stand in the relation of husband, wife, parent, child, brother or sister to Clifford Divers, the record is barren of any testimony touching the relationship, if any, between the plaintiff in error and Divers, and therefore this essential averment of the indictment was not proved.

Plaintiff in error, who alone is complaining here, testified that at the time of the fight he had known Clifford and Carl Divers for possibly a year or two. If it be said that the burden rests on the State, in the first instance, to prove beyond a reasonable doubt the relationship or lack of relationship existing between the accused and the one who has committed the crime charged in the indictment, such requirement was met by the statement of the plaintiff in error that he had known Clifford Divers but a year or two and the absence of any proof to the contrary. If this statement was true it precludes any reasonable probability that they bore any relationship enumerated in the statute.

It is argued that it was incompetent to show that William Thierry was dead, when, in fact, he was killed, if at all, by shooting at the hands of Carl Divers, and the indictment charged Clifford Divers only with an assault with intent to kill. It was competent to show that Thierry was not living. The abstract shows that other questions were asked with reference to when Thierry died, and no objections were made to the question or motion to strike out the answer. The abstract does not show by what means Thierry died, nor was it necessary to sustain this conviction that it do so. The question in this case is whether the assault made by Clifford Divers with a dangerous weapon was by its nature likely to cause the death of Thierry and was made with the intent to kill and murder. As we have seen, such was abundantly proved. No reversible error was committed in the admission of testimony.

It is argued that erroneous instructions were given. An instruction concerning reasonable doubt is complained of. As has been said by this court in *People* v. *Rogers,* 324 Ill. 224, but little assistance is rendered a jury by giving an involved instruction on reasonable doubt. The part of that instruction here objected to is: "Still by the expression, 'reasonable doubt,' the law means more than a bare possibility of defendant's innocence. It is such a doubt as

grows out of the unsatisfactory evidence; such a doubt induced by the evidence or want of evidence in the case as would cause a reasonable man to say, 'I am not satisfied that the defendant is guilty.' " This court has frequently condemned an instruction which elaborates on the term "reasonable doubt," as such term is of itself usually more clear than the elaboration of it. Trial courts have been warned that in a close case the giving of such an instruction may cause a reversal. This is not such a case, however, as would justify reversing the judgment on that account.

It is also argued that the second instruction given on behalf of the People is erroneous, misleading, and not a correct statement of the law. This instruction tells the jury that if they believe, beyond a reasonable doubt, that Divers made an assault as charged in the indictment, and that thereafter the defendants, knowing that such assault had been made by Divers, concealed the crime and harbored and assisted Divers to escape, they should find the defendants guilty as accessories after the fact, in manner and form as alleged in the indictment. The objection to this instruction is, that it did not tell the jury that they must believe from the evidence, beyond a reasonable doubt, as detailed in the instruction. Instructions are to be considered as a series. While the jury must believe from the evidence, beyond a reasonable doubt, that the accused is guilty of the crime charged before they can convict him, yet no less than eleven instructions impressed this upon the minds of the jurors, and we are of the opinion that the omission of that language in this instruction is not sufficient to require the reversal of this judgment.

We find no reversible error in this record, and the judgment of the circuit court of Knox county will therefore be affirmed.                    *Judgment affirmed.*