(No. 24995.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALEX SHAPIRO *et al.* Plaintiffs in Error.

*Opinion filed February 20, 1939—Rehearing denied April 12, 1939.*

HAROLD L. LEVY, (EDWARD M. KEATING, of counsel,) for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Alex Shapiro, Bruno Austin, Dave Sinnenberg and Morris Jacobs were convicted by a jury of the criminal court of Cook county of murder and were sentenced to imprisonment for life. The errors assigned are that their guilt was not established beyond a reasonable doubt and that the trial court erred in giving instructions on behalf of the People and in refusing instructions requested by defendants.

The killing occurred at a grocery store owned by Vincent DeRosa, in the rear part of which he and his family lived. Defendants were attempting to rob the grocery store about 5:30 A. M., July 15, 1935, and during this time Anthony Benidetto, a customer, was fatally shot. It is estab-

lished that defendants drove up in a car with the intention of robbing the store, having learned there was about $4000 hidden in the rear part of it. Alex Shapiro remained in the car, and the other defendants, all armed, entered the store. Benidetto was just leaving, but was forced back in the store at the point of a gun, defendants stating: "This is a stick-up." DeRosa had just stepped outside and he too was forced back into the store. What occurred from this point is controverted.

DeRosa testified that when he refused to go into the store he was hit on the head with a blackjack, and that after he was in the store he was hit twice more with a blackjack, which blows knocked him down and made him dizzy; that he did not actually see any shots fired, but heard four shots and saw defendants run out; that he fired no shots, but there was a gun in his bedroom.

Marguerite DeRosa, daughter of the proprietor, testified she was in her bedroom about 5:30 that morning and heard cries for help, whereupon she went to the door leading into the store; that she saw defendant Austin coming toward her with a shotgun in his hand and warning her to stand back and that she ran into the bedroom and heard about four shots. She then came out of the bedroom and saw Austin standing with a shotgun in his hand, with clouds of smoke around him; he then ran out of the store. She did not fire any shots. After defendants left, she saw only her father and the deceased in the store. She then telephoned the police.

Mrs. Vincent DeRosa testified she started to follow her daughter when they heard the noise, and saw Austin with the shotgun; she went back into her bedroom, fell on the floor, and when she again went into the store saw no one but members of the family and the deceased. She fired no shots and did not see any fired.

Jean Perri testified she lived above the DeRosa store, that she heard some screaming and about four shots were

fired. She went to her window and saw some "fellows" run into a car and leave.

Officers Mackey and Mulvaney arrested the defendants about 7:00 o'clock that night at the home of Sophie Allen. Shapiro and Jacobs broke a basement window attempting to escape. Mackey fired one shot which hit Shapiro in the wrist, and Jacobs was cut on the shoulder by the glass. They recovered the guns used, some of which were loaded and some unloaded. The German-Luger revolver, used by Sinnenberg, held nine cartridges but had only four in it when recovered by the police.

A ballistic expert examined the German-Luger revolver and testified that in his opinion it had been fired recently. He also testified that a pistol found in Vincent DeRosa's room had never been fired since it left the factory.

The coroner's physician testified that one bullet had passed through Benidetto's body, but did not say what kind of a bullet it was.

Each of the defendants made statements, introduced in evidence by the People, which were, in substance, the same as their testimony at the trial. According to defendants, they planned to rob the store, and each of them was armed when he entered the store. Austin went in first, entering the back door, and was followed by Jacobs and Sinnenberg. Austin testified that he told deceased and DeRosa it was a "stick-up," that he saw Sam DeRosa standing with a pistol in his hand and told him twice to drop it, but that instead he began firing. One of the shots hit Austin in the hand and Austin turned and ran out. He did not see Marguerite DeRosa. He did not fire any shots, nor did he see any of the other defendants fire any shots. Jacobs and Sinnenberg testified they were a few feet behind Austin, and that as soon as they stepped in the door shots were fired at them, and that Sinnenberg was shot and fell to the floor and had to be helped out. Neither of them fired any shots. Neither of them saw anybody shoot, but saw two men, evidently

referring to DeRosa and Benidetto. Neither of them saw Marguerite DeRosa. However, Jacobs admitted they met a man going out of the door and forced him at the point of a gun to go back in. In his statement Jacobs said his gun was in his belt all the time.

In support of their contention that the evidence does not prove their guilt beyond a reasonable doubt, defendants point out that no one testified he saw defendants shoot Benidetto or fire any shots. They contend someone else was in the store and did the shooting, and that their testimony as to this is uncontradicted, so that the evidence does not exclude every reasonable hypothesis but that of guilt. It is not true that their testimony is uncontradicted. Austin is the only defendant who testified he saw Sam DeRosa, (Vincent's son,) and he testified DeRosa was firing a pistol. Sam DeRosa denied this and stated he did not come out of his room until the shooting was over. In this he is corroborated by Vincent DeRosa and Marguerite DeRosa. All of the DeRosas testified the only gun in the house was the pistol in Vincent DeRosa's room, which the ballistic expert testified had never been fired. Defendants' counsel now concede this gun was not fired that day. They now argue that some unidentified person "framed" them, but there is no evidence of this. The testimony of defendants is contradicted in many other respects and is not very convincing. They testified Sinnenberg was shot in the stomach and had to be helped to the car, but Jean Perri, a disinterested witness, testified defendants ran to the car. They denied they hit Vincent DeRosa with a blackjack, but he testified they did. They all denied that any of them fired a shot, though they were all armed and had entered the store for the express purpose of robbing it. Accepting their testimony, only one other person was shooting. Marguerite DeRosa testified she saw Austin standing with a shotgun in his hand and clouds of smoke around him. The ballistic expert testified one of their guns had been fired recently. In our opinion the jury was warranted in disbelieving the

testimony of defendants, and finding the evidence sufficient to establish the guilt of the defendants beyond a reasonable doubt.

Complaint is made of that part of an instruction which defined reasonable doubt as follows: "Reasonable doubt referred to in these instructions is such that were the same kind of a doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause." The giving of instructions defining reasonable doubt, especially when they are long and involved, has been repeatedly criticized by this court on the ground that the term itself is usually more clear than any elaboration of it and an attempted definition serves more to confuse than to enlighten the jury. (*People* v. *Haskins,* 337 Ill. 131; *People* v. *Moses,* 288 id. 281; *People* v. *Parker,* 284 id. 272.) An instruction that has been repeatedly criticized by this court should not be given, but such an instruction has never been held to be so prejudicial as to require a reversal on that ground, alone. Here, the definition was given in one sentence and we do not perceive how the jury could have been misled by it. Defendants say it implies that if a reasonable and prudent man would hesitate and pause because of the doubt, yet, after hesitating and pausing, the jury could go ahead and convict. The instruction contains no such implication. It states that if the doubt would cause reasonable and prudent men to hesitate and pause the doubt is reasonable—such a doubt as requires an acquittal.

The court gave the following instruction in regard to the statements of defendants introduced by the People: "There have been admitted in evidence in this case statements. It is for the jury to determine from all the facts and circumstances in the case what weight or credit shall be given to these statements, and to be considered by the jury with all the other evidence in the case in determining the guilt or innocence of each of the defendants.". The objection to this instruction is that it impeached the weight to be given the defendants' statements as distinguished from

the rest of the People's testimony. It is a sufficient answer to say that the instruction is a correct statement of the law and does not purport to impeach the statements. It tells the jury it shall determine their credit and weight, as it does of all the other evidence.

Defendants claim the court incorrectly defined circumstantial evidence when it instructed that "circumstantial evidence in criminal cases is the proof of such facts and circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the party charged," etc. This same definition of circumstantial evidence was approved in *People* v. *Gould,* 345 Ill. 288, and *Parsons* v. *People,* 218 id. 386. It was not error to give this instruction, nor to refuse the instruction on circumstantial evidence offered by defendants.

Defendants complain of an instruction which told the jury that if it believed a crime was committed and that defendants, immediately after the commission of the crime with which they stand charged, fled and remained away until they were taken into custody, such flight is a proper circumstance to be considered in determining the guilt or innocence of each of the defendants. A similar instruction was approved in *People* v. *Wheeler,* 297 Ill. 289. This instruction is not objectionable on the ground urged, that there was an issue of fact as to whether defendants were present at the time of the killing. All of the evidence is that they were present. The court did not err in giving this instruction.

The instruction in regard to the responsibility of an accomplice is the same as instruction No. 8 approved in *People* v. *Guido,* 321 Ill. 397, and correctly stated the law. The cases of *Butler* v. *People,* 125 Ill. 641, and *People* v. *Garippo,* 292 id. 293, relied on by defendants, are clearly not in point and need not be discussed.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*