(No. 33421.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR HANSEN, Plaintiff in Error.

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, Arthur Hansen, was convicted by a jury of the burglary of a jewelry store in the city of Chi-

cago and was sentenced to a term of three to seven years in the penitentiary. He has brought the case here by writ of error to review the sufficiency and competency of the evidence.

On the early morning of January 1, 1953, two men, named Hagl and Fairchild, were shot and killed by the police in the street near the jewelry store alleged to have been burglarized, and plaintiff in error was wounded by the police as he was driving his automobile a short distance from the store. Plaintiff in error was indicted for burglary and assault with intent to murder, and upon his conviction of burglary the State, by leave of court, entered a *nolle prosse* on the assault indictment.

The evidence heard by the jury, consisting chiefly of the testimony of the police officers, was to the effect that on the evening of December 31, 1952, the police lieutenant in charge of the unit of the Chicago police known as the "special assignment unit" assigned eight policemen to keep under surveillance, in the early hours of the following morning, a residence property occupied by one Hagl. About 4:00 A.M., six officers, who had parked their cars near the property, saw a two-door green Pontiac car stop in front of the house and a man got out of the car and entered the residence. Shortly thereafter, five men emerged, three entered the two-door Pontiac and the other two got into a four-door Pontiac which had been parked in front of the house. It was dark and none of the officers was able to identify any of the five men, but two of the officers testified the two-door Pontiac bore a license number issued to plaintiff in error. Four of the officers in two cars tried to follow the four-door Pontiac but lost it and then parked their cars near the jewelry store. The other two officers followed the two-door Pontiac as it drove past the jewelry store, then returned and parked in an alley near the store. These two officers testified the three men got out of the Pontiac and walked to the front of the store. One of the

officers testified he had known the plaintiff in error since 1946 and, while the three were standing in front of the store, he, not dressed in uniform, walked past them and recognized plaintiff in error. He stated he saw the three enter the vestibule at the front of the store, he turned back, walked past the store and observed three figures inside the store which was partially illuminated by a night light. The other officer who had remained across the street testified that he saw the three men enter the vestibule and saw, by the night light, three figures inside the store. He stated he then called the police station and two officers came in a police squad car which they parked across the street. As to what occurred thereafter the testimony of the four officers, as to many of the details, shows considerable variation. The two officers who arrived in the squad car testified that as they approached the store three men emerged, that when they announced they were police officers two of the men began firing at them, that they returned the fire killing two of the three and the third ran around the corner. Although both these officers testified that two of the three men fired at them, and they remained with the bodies while they were searched and until they were removed, one of the officers never saw a gun on or near either of them, while the other officer testified he saw one gun lying near one of the bodies. There was no evidence of any kind that this gun was loaded or contained any discharged cartridges although the gun was taken to the police station by the officers, inventoried in the police records, and introduced in evidence at the trial.

The officer who had stationed himself across the street testified that only one of the three men fired a shot at the police. He stated that the third man ran to the parked Pontiac, got in and drove away; that he chased this car, heard a lot of shooting in the direction of the car and he came upon the car stopped in the street with plaintiff in error lying beside it wounded; that plaintiff in error told

him his name and asked to be taken to a hospital. He further testified that he returned to the two bodies lying in the street, saw a gun lying near one of the bodies and found a key which fitted the front-door lock of the jewelry store in the possession of Fairchild.

One of the officers who had followed the four-door Pontiac, and after losing it had parked near the jewelry store, testified that after he heard shots in the direction of the store he saw an automobile approaching without lights; that he yelled he was a police officer and commanded the car to stop; that the lights were then turned on, he could see the license number, and when the car failed to stop he and several other officers opened fire; the car stopped and plaintiff in error rolled out, wounded and begging for mercy. This officer also testified that he saw three flashes inside the car before it stopped. On cross-examination he stated all the bullet holes in the car were punctured inward; and admitted that he had filed a sworn complaint charging plaintiff in error with assault with intent to murder him. No gun was found on plaintiff in error's person or in his car.

The State introduced as exhibits the gun, key and lock tumbler, a pocket knife, flashlight and screwdriver found on the person of Fairchild, and a broken padlock allegedly taken from and found near the back door of the store.

The plaintiff in error contends that this evidence is all circumstantial and that under the rules governing that type of evidence it is insufficient to show that a burglary was committed or that plaintiff in error committed the crime. He contends this evidence fails to meet the standards set up by this court in such cases as *People* v. *Yaunce,* 378 Ill. 307; *People* v. *Crego,* 395 Ill. 451, and *People* v. *Grizzel,* 382 Ill. 11, wherein this court has said, in general terms, that such evidence must be of such a conclusive nature as to produce a reasonable and moral certainty of guilt which

so thoroughly establishes the guilt of the accused that every reasonable hypothesis of innocence is excluded.

We believe the evidence in this case adequately meets this test both as to the commission of a burglary and the plaintiff in error's participation. The proof of the burglary does not rest alone upon the testimony of the two police officers that they saw three figures inside the store, the front-door key and the padlock, but upon all the facts and circumstances and inferences arising therefrom. There can be no reasonable doubt that three men entered a two-door Pontiac at the dwelling of Hagl, parked their car nearby and entered the vestibule of the jewelry store. There seems to be no reasonable doubt but that they remained either in the vestibule or the store a sufficient length of time for one of the officers to make a telephone call to the police station and a squad car to arrive, and upon its arrival they emerged from somewhere. The jury heard the testimony of the police officers that they saw figures inside the store, they were fully informed as to the witnesses' abilities to see, and they observed the demeanor of the witnesses as they testified. There is nothing in the record to discredit their testimony.

Proof of plaintiff in error's participation is equally convincing. It cannot be denied that he was apprehended in a green Pontiac automobile in the immediate vicinity, travelling away from the scene, immediately after the first shooting. The testimony of the officers identifying the license number could be completely disregarded and there would still be no reasonable doubt that this was the same automobile that the officers followed from Hagl's home, with three occupants, that was parked in the vicinity of the jewelry store. Nor is there anything in the record to discredit the testimony of the officer who recognized defendant in front of the store or of the officer who saw the third man run to the car the three had parked there and

that he followed that car and found plaintiff in error lying wounded beside it.

"Circumstantial evidence is legal evidence, and where it is of so strong and convincing a character as to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, it is the duty of the jury to act upon it and find the defendant guilty, and such verdict must be sustained." (*People* v. *Wilson*, 387 Ill. 563.) Burglary consists of entering, with or without force, any dwelling or other building, either in the daytime or nighttime, with intent to commit a felony or larceny. (Ill. Rev. Stat. 1953, chap. 38, par. 84.) "The felonious intent of an accused may be inferred from his words, action, violence and other conduct and it is within the province of the jury to consider all the facts and circumstances of the case in determining the question of intent." *People* v. *Maffioli*, 406 Ill. 315.

As to the commission of the crime of burglary in the instant case and defendant's participation, this evidence is adequate to convince us to a moral certainty of plaintiff in error's guilt and so thoroughly establishes his guilt that there is no reasonable hypothesis of innocence.

Plaintiff in error also points out certain specific parts of the evidence which he contends the court erroneously admitted. We have examined each of these objections and none of them pertains to the evidence which we consider establishes the commission of the burglary and defendant's participation. These objections deal primarily with the positive identification of defendant or his license number or the exhibits, and even if well taken they would not alter the result or result in prejudice to the plaintiff in error.

Plaintiff in error's more serious and meritorious objections relate rather to the justification for killing the two men than to the commission of the burglary and defendant's participation. However, the proof of the burglary and

defendant's participation does not depend upon the conduct or testimony of these officers.

Plaintiff in error was represented by able counsel of his own choosing, he had a fair trial before an impartial jury. The verdict of that jury will not be set aside where this court, after reading the record, has no reasonable doubt of the defendant's guilt and can find no prejudicial error which might have misled the jury. The judgment of the criminal court is affirmed.

*Judgment affirmed.*