(No. 41123.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ANNA LEWELLEN, Appellant.

*Opinion filed May 28, 1969.—Rehearing denied September 23, 1969.*

LEWIS, BLICKHAN & GARRISON, of Quincy, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT J. BIER, State's Attorney, of Quincy, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

After trial by jury in the circuit court of Adams County, Anna Lewellen was found guilty of voluntary manslaughter in the death of her husband. She was sentenced to the penitentiary for a term of not less than 5 nor more than

15 years. She appeals directly to this court, on the theory that a constitutional question is involved. To reverse the conviction her counsel argues that the statute defining the crime is unconstitutional, that defendant's statements to police officers were improperly obtained, that a change of venue was erroneously denied, that the names of certain State rebuttal witnesses were not provided to defendant in advance of trial, that error was committed in the giving and refusing of instructions, that prejudicial argument to the jury was made by the prosecutor, and, finally that the evidence is insufficient to support the verdict.

The record discloses that at the time in question defendant was 68 years of age, 5 feet 2¾ inches in height, and weighed about 150 pounds. Her husband, who suffered to some extent from Parkinson's Disease, was 73 years old, 5 feet 7 inches tall, and weighed 158 pounds. They had been married for 40 years, and resided in a 4-room cottage at Quincy, Illinois. In the late evening of February 15, 1967, a passerby driving along the street was hailed down by defendant who came running out for help, exclaiming that her husband had a heart attack. He stopped his car and ran to the driveway where he saw an unconscious man lying on his back by an automobile. The car door was open with the man's head resting on the running board. Defendant refused to have an ambulance called so the passerby lifted the husband into the car for her. She backed out into the street and then headed in a direction opposite to that of the hospital. The passerby told her to turn around, and he offered to call the hospital emergency quarters, but she said she could take care of it and proceeded to drive away.

Defendant was next seen at a gasoline service station in Chicago shortly after 5 o'clock the next morning. As she drove in the attendant noticed the man in the car lying up against her arm. She asked him where the nearest hospital was, explaining that her husband, who had a history of heart attacks, had been beaten upon on the highway.

The attendant did not tell her where the hospital was but called the fire department and the police. When the firemen arrived they examined the husband and found he had been dead for some time, rigor mortis having set in. The police arrived, and one of the officers took defendant into the gas station office for questioning. She explained that they had stopped on the highway with tire trouble and that while her husband was out looking at the tire three youths stopped and beat him up with a stick. Later at the police station, when told that a witness had been found who had helped place her husband's body in the car at Quincy, defendant changed her story. She then related that on the evening in question her son came to their home intoxicated, that he and her husband started drinking together, that when her husband refused to give the son any money an argument ensued in which the husband was beaten with a chair and left lying on the floor, and that in trying to get him to a hospital or a doctor defendant managed to move him out of the house on to the driveway next to the car.

At the trial defendant gave a still different version. She testified that in the afternoon of the day in question she had purchased some paint and other materials in preparation for doing some interior painting. That evening her husband, who had been walking around in the house, kicked over one of the cans and apparently in a fit of anger started throwing them into the sitting room. He resumed his walking around. Shortly thereafter, he picked up the television antenna and threw it to the floor near the sofa. He pushed over an overstuffed chair and later, when he stubbed his toe on a wooden chair he kicked it to the floor and stamped upon it, breaking the rungs. Soon after that he came out of the bathroom and started for the back door. Defendant stepped in between her husband and the doorway, convinced that he was in no condition to leave the house. He then grabbed her, held her wrists, and backed her into the sitting room. Defendant lost her balance and fell over back-

wards, the back of her head striking the lower part of the outside door. Her husband fell on top of her, raised up in a sitting position and started beating her and choking her. When she felt a stick underneath her arm she struck and jabbed at him with it and kept hitting him until he released his hold on her throat and stood up. He went to the sofa and sat there for awhile. Later he went into the bathroom at defendant's request, and she washed the blood off him where the pointed ends of the stick had pierced the skin. As she was rinsing out the washcloth her husband fell to the floor, his head striking the bathtub. She raised him to a sitting position, felt for a pulse or a heartbeat or some other sign of life, but found he was dead. According to the pathologist who testified for the prosecution, death was a result of shock caused by the numerous cuts and bruises and the loss of blood. No internal organs were interfered with, nor was any internal artery severed. Defendant further testified that they had had trouble with the authorities "over our children", and she felt she could not get fair treament in Adams County. She wanted to get to another county where she "could get an autopsy that was independent of the Adams County authorities." After she got her husband into the car, with the help of the passerby, she intended to go into another county for a hospital, but she was dazed and simply kept driving until she reached Chicago.

It appears from the testimony of psychiatrists that defendant suffered from a form of paranoia. She had a delusion of persecution consisting in a very strong belief that the judicial system in Adams County and the State's Attorney's office there had picked on her for many years. She was normal enough in other areas, however, and after a preliminary jury trial on the question of competency she was found to be not incompetent.

Defendant claims, *inter alia,* that she struck the deceased in self-defense, and she says the State failed to prove her

guilty of voluntary manslaughter. It is well settled that this court may review all of the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt, and where the record leaves this court with a grave and substantial doubt of the guilt of the defendant the judgment will be reversed. (*People* v. *Willson*, 401 Ill. 68; *People* v. *Newman*, 363 Ill. 454.) Such is the case here. It is not at all clear that the death occurred as a result of the struggle, but assuming such to be the case we still can see few circumstances indicating guilt, other than defendant's bizarre behavior in departing with the body of her husband and in making inconsistent explanations of its condition.

The State concedes that the conviction could not stand if her story of the force she used and the circumstances attending the use of that force were to be taken as true. It is insisted however, that defendant's "flight" and conflicting stories, together with the number, location, and severity of her husband's injuries, cause doubt as to her veracity, and that this is sufficient to sustain the verdict. If her testimony is disregarded there is little left but conjecture to establish that death was caused by criminal conduct on her part. Where the only evidence in a prosecution for homicide is circumstantial evidence the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People* v. *Willson*, 401 Ill. 68; *People* v. *Campagna*, 240 Ill. 378.) The evidence in the case at bar does not carry with it a reasonable certainty of the guilt of defendant.

Where, as here, there exists a reasonable doubt as to whether the accused is guilty of manslaughter or murder, or is not guilty because in the exercise of self-defense, the doubt should be resolved in favor of the accused. (*People* v. *Jones*, 313 Ill. 335.) Despite her inconsistent statements to police officers and to the gasoline station attendant, defendant's testimony about what actually happened in their home cannot be ignored, since it has corroboration in the

facts that blood was found on the lavatory and bar of soap in the bathroom, that her husband's wounds and cuts, although numerous, were mostly superficial in nature, and that she herself had bruises on her legs.

We conclude that the evidence in this case is not of that clear and convincing character that is required to establish guilt beyond a reasonable doubt. In view of our conclusion it is unnecessary to consider the other objections made on defendant's behalf. The judgment of the circuit court will be reversed.

*Judgment reversed.*