THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS J. MINISH, Defendant-Appellant.

(No. 73-144; ▮▮▮▮▮▮▮▮▮

Third District—May 20, 1974.

STOUDER, J., dissenting.

Robert Agostinelli, of Office of State Appellate Defender, of Ottawa, for appellant.

C. Brett Bode, State's Attorney, of Pekin (Jay H. Jansen, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

After trial by jury in the circuit court of Tazewell County, Dennis Minish, the defendant, was found guilty of the crime of robbery and sentenced to a term of not less than 2 nor more than 6 years in the penitentiary.

The factual situation which resulted in the defendant's conviction is as follows. On November 1, 1972, a William Durlacher was at his place of employment which was a Clark Service Station in Morton, Illinois. At 3 A.M. on this date the defendant and his companion, a Michael Peters, approached the station on foot and the defendant entered the building and inquired of the attendant Durlacher as to the location of the rest room. After receiving this information the defendant and Peters walked around the side of the building together. In approximately 2 or 3 minutes Peters entered the station, brandished a pistol (which was subsequently discovered to be a blank pistol) and announced a robbery. During this time the defendant was standing outside the door of the service station. Durlacher gave Peters $50 and some change. After re-

ceiving the money Peters left the station, said something to the defendant and pushed him in a westerly direction while he fled to the east.

Within minutes after the robbery both the defendant and Peters were apprehended by the police. At the time of their apprehension they were in a car being driven by Peters. At this time the police officer observed the defendant shuffling his feet in an effort to kick something under the car. An officer then found the gun used in the robbery under the car near the right front wheel. It was also at this time discovered that Peters had on his person $39 and some odd cents. The defendant had a $10 bill and a $1 bill.

During the course of the defendant's trial Peters testified to the effect that he decided to rob the gas station while he was in the rest room and that the defendant did not know of his intention prior to the robbery. He further testified that it was not until they were being apprehended that he informed the defendant that he had committed the robbery. He further stated that he did not give the defendant any of the proceeds of the robbery but had given him $10 earlier in the night.

The defendant's first contention is that his accountability for the robbery committed by Peters was not proven beyond a reasonable doubt.

■■ A person is legally accountable for the conduct of another when, either before or during the commission of an offense and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid, such other person in the planning or commission of the offense. (*People v. Jones*, 12 Ill.App.3d 643, 299 N.E.2d 77.) The proof of such acts, which would show a common purpose between individuals to perpetrate a crime need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of the act. See *People v. Bristow*, 8 Ill.App.3d 805, 291 N.E.2d 189.

In the instant case we not only have no proof of words of agreement between the defendant and his companion Peters, but on the contrary have direct testimony from Peters to the effect that there was no common purpose to commit the robbery. In examining the evidence adduced during defendant's trial we find (1) at 3 A.M. the defendant and Peters approached the station together, (2) the defendant stood outside the door while Peters robbed the attendant, (3) the defendant and Peters fled together, (4) they were apprehended together, (5) the defendant attempted to hide the gun used in the robbery, and (6) the defendant and Peters had between them the exact amount of money which was taken in the robbery.

■■■ When confronted with such evidence could the jury correctly conclude that the defendant had the intent to assist in promoting the

crime and did in fact aid and abet in its commission. We believe that the jury could and did correctly reach such a conclusion. To prove guilt beyond a reasonable doubt does not mean that a jury must disregard inferences that flow normally from the evidence. (*People v. Chamberlain*, 5 Ill.App.3d 235, 282 N.E.2d 784.) We are of the opinion that the jury's verdict is supported by the evidence notwithstanding the testimony of Peters which if believed would have exculpated the defendant. It is within the province of the jury to determine the credibility of all witnesses and the weight to be given their testimony, and a verdict will not be reversed unless the evidence is so unsatisfactory as to leave reasonable doubt of defendant's guilt. *People v. Willis*, 126 Ill.App.2d 348, 261 N.E.2d 723.

The defendant next assigns as reversible error the trial court's refusal to give Criminal Instruction 3.02 in its entirety.

The State tendered and the court gave a circumstantial evidence instruction which included only the first paragraph of I.P.I. Criminal Instruction 3.02. That given by the court is as follows:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at a verdict."

The defendant tendered I.P.I. 3.02 Criminal in its entirety which in addition to the first paragraph above set forth also contained the following additional paragraph:

"You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The committee note contained in Illinois Pattern Jury Instructions—Criminal, regarding instruction 3.02, is that the second paragraph should be given only when the proof of guilt is entirely circumstantial. In the case before us the proof of guilt was not entirely circumstantial, for eyewitness testimony placed the defendant approaching and leaving the scene of the crime with Peters and also placed the defendant just outside the service station door while the robbery was occurring. The attendant who was robbed made an in-court identification of the defendant. We do not believe that such testimony constitutes circumstantial evidence and consequently hold that the second paragraph of I.P.I. Criminal Instruction 3.02 was properly refused.

Lastly the defendant contends that this case should be remanded to the trial court for a hearing to determine whether his appearance before the jury in jail coveralls resulted from a voluntary waiver.

■■ We could well hold that this issue is not properly before this court since defendant made no objection to the wearing of jail coveralls during his trial nor did he assign this point as error in his motion for a new trial. (See *People v. Lampson,* 6 Ill.App.3d 1099, 286 N.E.2d 358.) We will not, however, dispose of the defendant's contention on these grounds. The alleged error is one which we deem to be of sufficient import to affect the substantial rights of the defendant and therefore pursuant to Supreme Court Rule 615 (Ill. Rev. Stat., ch. 110A, sec. 615) this court will consider it.

We are mindful of the case of *Xanthull v. Beto,* 307 F.Supp. 903, in which the court stated that a jail uniform is not inherently prejudicial and the petitioner has the burden to establish the manner in which the uniform prejudiced his right to a fair trial. We are also not unmindful of the opinions of other courts which have adopted the view that an evidentiary hearing is necessary in order to determine whether a defendant's right to a fair trial was prejudiced by going to trial in jail clothing. See *Watt v. Page,* 452 F.2d 1174.

A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error. (*Hernandez v. Beto,* 443 F.2d 634.) We further note that in *Hernandez* the court stated "We do not paint with a broad brush these types of cases. Each case must be considered in its own factual context." (*Hernandez v. Beto,* 443 F.2d 634.) We agree with this observation and consequently direct our attention to the particulars in the case before us.

As we have stated the defendant at no time objected to being tried in coveralls which is apparently the uniform provided to prisoners by Tazewell County. Instead of objecting to such attire it is clear from the record that defense counsel attempted to use such garb in an effort to elicit sympathy from the jury. In defense counsel's closing argument to the jury he stated:

"It was not their choice [defendants Peters and Minish] that they had to be brought over in their uniforms. It was not their choice that they had to be paraded around in front of you in handcuffs. If they had the money to get out on bail like most people do, they would be sitting in the courtroom with suits on in a great role. So don't consider the prejudice of being paraded in front of you out there outside with handcuffs on as another inference of guilt."

The prosecution in reply stated:

"* * * I'm not interested in the length of Mr. Minish's hair. I'm not interested in whether he was handcuffed when he was brought over here and I'm not interested in whether he is wearing a prison

uniform and I don't want you to bring back a verdict because of any of these things and I don't think that you will because of those things.  *  *  *"

We can only conclude after reflecting upon these statements and the record in its entirety that the wearing of coveralls by the defendant did not influence the jury to find him guilty, but instead he was convicted upon the evidence adduced during his trial. We fail to see how any useful purpose could be served by remanding this case to the trial court for an evidentiary hearing to determine whether or not the defendant's appearance in court attired in jail coveralls was voluntary. It is obvious that he not only did not object to but instead attempted to utilize such attire to his benefit.

For the reasons set forth the judgment of the circuit court of Tazewell County and the sentence imposed thereon is affirmed.

Affirmed.

DIXON, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I disagree with the majority and believe the case should be reversed or, at the least, reversed and remanded for new trial.

Treating the issue relating to the instruction on circumstantial evidence first, it is my conclusion the trial court committed prejudicial error in refusing to give the full instruction. At the outset it should be noted that the theory of accountability which the prosecution used required proof beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or the commission of the offense; (2) this participation took place either before or during commission of the offense; and (3) it must be with a concurrent specific intent to promote or facilitate the commission of the offense. These elements are in accord with section 5—2(c) of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c)). I mention these elements at this time in order to furnish a background in which to consider the nature of the evidence, since it would appear fundamental that evidence must be considered in light of what it is offered to prove.

According to the majority opinion the trial court correctly refused to give the full I.P.I. Criminal Instruction 3.02 because there was some direct evidence. Two problems concern me. What is direct evidence as distinguished from circumstantial evidence? Why should the second paragraph not be given merely because there is some evidence which may be regarded as direct evidence? There can be little doubt that the

drafters of the pattern instructions did make a recommendation against use of the full instruction unless all of the evidence was circumstantial. On page 21 of I.P.I. Criminal appears:

> "See, *People v. Guido,* 321 Ill. 397, 415-16, 152 N.E. 149, 156-57 (1926).
>
> This instruction should not be given when all of the evidence is direct. *People v. Gardner,* 4 Ill.2d 232, 240-41, 122 N.E.2d 578, 582 (1954).
>
> The second paragraph should be given only when the proof of guilty is *entirely* circumstantial."

I believe it appropriate to consider some aspects of circumstantial evidence in order to establish some background or context against which the entire circumstantial evidence instruction can be reviewed. To the extent the term "circumstantial evidence" is used in contra-distinction to "direct evidence", the precedents and legal texts are not nearly as definitive on this subject as might be initially supposed. In large measure the lack of much authority on the subject would indicate generally that the distinctions between direct and circumstantial evidence are seldom of critical importance. Circumstantial evidence is most frequently discussed not in contrast to direct evidence but in terms of sufficiency to support a verdict of guilty. In such terms it is considered legal evidence having no abstract legal limitations in so far as it may tend to prove issues in controversy and persuade triers of fact of the truth. Necessarily, when talking of sufficiency of evidence in a criminal case the standard of reasonable doubt is of primary importance. This adds to the confusion concerning definitions of circumstantial evidence and the application to individual cases because, as has often been said, to define reasonable doubt or its equivalent phrases involves factual arguments rather than legal concepts.

According to Gard's Illinois Evidence Manual, ch. 1, p. 19, r. 4:

> "Direct evidence is that which is perceived by the senses and transmitted to the trier of the facts through the testimony of the witness, or which is demonstrated to the trier of the facts by proffering the thing itself in court for inspection. Circumstantial evidence is that from which it may be inferred in reason that other facts are true because of a logical relationship or association between the two."

In a comment to this rule the author observes:

> "Here again a thoroughly accurate definition is difficult. But to emphasize the distinction may be helpful in understanding the sense in which the terms 'circumstance' and 'circumstantial evidence' are used throughout this work.

Lawyers will have little trouble in recognizing the distinction between direct and circumstantial evidence."

This latter observation seems somewhat anomalous because the distinction does not appear easily recognized either by courts or text writers.

As stated in 29 Am.Jur.2d *Evidence* § 264:

"The basic distinction between direct and circumstantial evidence is that in the former instance the witnesses testify directly of their own knowledge as to the main facts to be proved, while in the latter case proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the common experience of mankind. Circumstantial evidence tells the story of a past transaction by the similitude between the things shown to have been done and what in human experience has been found to be generally the cause or result of similar occurrences."

In Callaghan's Illinois Evidence, ch. 1, § 1.06, the following appears: "Direct evidence is evidence which applies directly or immediately to the fact to be proved, without any intervening process. For example, testimony of a witness who saw an event occur or an offense committed is direct evidence as to the event or offense, and a writing is direct evidence of its existence and contents. On the other hand, circumstantial evidence in a civil case is evidence of circumstances or incidental facts from which the existence or nonexistence of a controverted fact may be inferred, and, in a criminal case, it is evidence of such facts and circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the party charged."

As authority for the definition of circumstantial evidence in a criminal case the author refers to *People v. Shapiro,* 371 Ill. 234, 20 N.E.2d 284. In the *Shapiro* case as well as in the earlier cases of *People v. Gould,* 345 Ill. 288, 178 N.E. 133, and *Parsons v. People,* 218 Ill. 386, 75 N.E. 993, the foregoing definition was included in an instruction approved by the court even though a review of the cases indicates an absence of any questions concerning the presence or absence of circumstantial evidence or distinctions between such types of evidence and direct evidence. Again, neither the cases nor the author have directed any critical attention to distinctions based on character of the evidence.

As stated in Illinois Law & Practice Criminal Law, ch. 24, § 433:

"Circumstantial evidence is indirect proof of the principal facts in a case, which principal facts can only be inferred from one or more circumstances directly established." See also C.J.S. *Criminal Law,* § 907.

In McCormick on Evidence (2d ed.), tit. 7, ch. 16, § 185, p. 435, the author observes:

"The characterization of evidence as 'direct' or 'circumstantial' points to the kind of inference which is sought to be drawn from the evidence to the truth of the proposition for which it is offered. If a witness testifies that he saw A stab B with a knife, and this testimony is offered to prove the stabbing, the inference sought is merely from the fact that the witness made the statement, and the assumption that witnesses are worthy of belief, to the truth of the asserted fact. This is direct evidence. When, however, the evidence is offered also for some further proposition based upon some inference other than merely the inference from assertion to the truth of the fact asserted, then the evidence is circumstantial evidence of this further fact-to-be-inferred. Thus in the case mentioned if the stabbing were proved and the culprit in doubt, testimony that A fled from the scene, offered to show his probable guilt, would be direct evidence of the flight but circumstantial evidence of his murderous act. Similarly, testimony of a witness that he recognized A as one present on the scene would be direct evidence of the facts asserted, but testimony that he saw someone who was disguised and masked, but had a voice and a limp like A's, would be circumstantial evidence that the person seen was A."

When it comes to applying the foregoing concepts and theories of circumstantial evidence there are several important conclusions which can be drawn that dispel some of the uncertainties associated with the general rules. When circumstantial evidence is discussed in contrast to direct evidence its most essential characteristic is that it is indirect evidence. Neither direct or indirect evidence nor direct or circumstantial evidence are discrete categories but rather, represent ways of viewing evidence in relation to its probative value, and more particularly, its relevance. Whether evidence is direct or indirect does not depend on the mode of its presentation during the trial process. In either case the evidence is presented through the testimony of a witness reporting his perception of facts or incidents and it is the nature of the facts or incidents so reported which determines the character of the evidence. When the facts so reported are variously described as the principal facts, the ultimate facts, the main facts or the facts constituting the offense, the evidence is said to be direct. If, however, deductions or intermediate inferences are required from facts which standing alone do not unequivocally support the charge, then the effect of such evidence is indirect. Motive, opportunity, design, consciousness of guilt or credibility may be

deduced or inferred from facts not directly related to guilt and from such inferences and deductions the facts relating to guilt may be established. Facts considered to have indirect relevance to proof of other facts usually by themselves have multiple components, one tending to prove guilt or which is at least consistent with the theory of guilt, and another component consistent with innocence. For instance, if there is testimony that an accused was seen a block away from the scene of the criminal offense at about the time of its commission, it may be inferred from such fact the defendant had opportunity to commit the offense. At the same time, the accused's presence would be consistent with a claim of innocence as for example, where he was at the location for the purpose of making a purchase. It is the combination of various bits of indirect evidence which tends to establish other facts depending on varying degrees of probability which produces the final or total persuasive effect. Even what is characterized as direct evidence is somewhat probabilistic. For instance, two witnesses may view the same incident or event and describe it differently thereby requiring the conflict to be resolved by some estimation based on probability. The principal difficulty in applying the general observations regarding direct and indirect testimony with the facts of a particular case is the underlying problem of deciding what are ultimate or principal facts or facts directly related to the offense charged. As the terms are generally described, they would apply to what has formerly been characterized as the res gestae. Illustrative of this conclusion is the observation of the court in *People v. Bretagna,* 298 N.Y. 323, 325, 83 N.E.2d 537, 538, wherein the court observes:

> "In other words, direct or positive evidence, as the term is commonly used, means statements by witnesses, directly probative of one or more of the principal, or 'res gestae' facts of the case, while circumstantial evidence puts before the tribunal facts which, alone or with others, are in some degree but indirectly, probative of one or more of those principal, or 'res gestae' facts, and from which one or more of those principal facts may properly be inferred."

In the foregoing case, the court concluded that an extrajudicial confession was not circumstantial evidence (although admissions would be so considered) and that consequently, defendant was not entitled to an instruction based on his assertion there was no direct positive evidence but only circumstantial evidence of guilt. To the same effect are *People v. Costello,* 320 Ill. 79, 150 N.E.712, and *People v. Langdon,* 133 Ill. 382, 24 N.E. 874, wherein an extrajudicial confession was declared to be direct evidence without discussion or citation of authority. As suggested in 40 A.L.R. 571, extrajudicial confessions seem to be considered a higher

order of evidence then either direct or circumstantial evidence. When direct evidence is related to res gestae it follows that it is subject to the same limitations that the theory of res gestae possesses. Limits of res gestae are not clear and most cases now generally suggest the term relates to the occurrence or transaction and that limiting the definition and application of the term usually serves no useful purpose. On the other hand, if direct evidence is related and limited by the transaction or occurrence test possible confusion arises because these terms also are employed rather broadly in civil cases. Occurrence witnesses, *i.e.*, those persons who have seen some part of the occurrence, from a broad category and would include witnesses whose reported facts would be considered circumstantial or indirect evidence. Such ideas may explain the confusion in a case which I would like to discuss, which in my judgment, makes erroneous assertions concerning the character of evidence as direct or circumstantial. It is *People v. Gardner*, 4 Ill.2d 232, 122 N.E. 2d 578, cited in the committee note to the circumstantial evidence instruction (I.P.I. 3.02, Criminal) for the proposition that where the evidence is all direct evidence an instruction on circumstantial evidence is prejudicially erroneous. The *Gardner* case after announcing this proposition finds without discussion that all of the evidence is direct evidence and hence, the circumstantial evidence instruction should not have been given. A review of the facts in the *Gardner* case indicates to me the difficulty of separating direct evidence from circumstantial evidence and confusion as to what direct evidence is. In *Gardner*, the defendants were charged with robbery and were identified by the victim in open court as the perpetrators of the crime. This testimony would seem to fall squarely within our definition of direct evidence both as to the fact of the criminal offense and as to the identity of the persons committing the offense. However, the State then proceeded to introduce the testimony of two police officers not present at the scene of the offense at the time it was committed who testified that the day after the offense the victim was unable to identify the defendants in a photo showup but 1 to 2 days later identified the defendants in a lineup. It appears to me that an out of court identification is not a principal issue or ultimate fact upon which a criminal charge is based but relates to the truthfulness of the witness, a collateral issue indirectly relevant to the issue of guilt or innocence. Also in the *Gardner* case, the defendants presented witnesses supporting the defense of alibi. Is not such alibi testimony circumstantial because it seeks to establish inferentially that the defendants had no opportunity to commit the offense because of their presence elsewhere? By implication, the court in *Gardner* suggests that so long as the evidence is presented by witnesses testifying in court, it is direct evidence and not cir-

cumstantial evidence. The additional cases cited in *Gardner* in support of its conclusion likewise offer examples of cases where a circumstantial evidence instruction was held inappropriate because the evidence was wholly direct but like the *Gardner* case they do so without any analysis of the evidence presented. In fact, in each case there would appear to be some evidence which should have been regarded as circumstantial.

I have called attention to the *Gardner* case primarily for the purpose of illustrating that whatever differences there are in theory between direct and circumstantial evidence, they at best do not offer an adequate basis in many cases for determining whether all of the evidence is of one character or the other. See, e.g., *People v. Christiansen*, 118 Ill.App. 2d 51, 254 N.E.2d 156, where in a burglary case the court held the corpus delicti was proved by the direct evidence of the filling station lessee even though the lessee did not testify that he saw anyone break into the station, enter the station, or take any money, and when in fact the lessee was not near the station when the burglary occurred during the early morning hours while the station was closed.

In the instant case I believe there is direct evidence since the charge is robbery and the victim testified to the threats of force made by the codefendant and the taking of money by the codefendant as a result of the threats of force. Defendant was charged with robbery and the evidence of the offense and the conduct of the codefendant were essential elements of the charge against defendant. Beyond these facts, the other testimony of the victim, including defendant's presence at or near the scene, is difficult to characterize in terms of direct or indirect evidence.

This brings me to my final observations on the circumstantial evidence instruction. My conclusion is that limiting the second paragraph of the instruction to only those cases in which all of the evidence is circumstantial is neither justified by the nature of circumstantial evidence nor by precedential authority. The circumstantial evidence instruction is not as clear a definition of the term as one might suppose would be understandable by a lay jury. It well may be that because direct and circumstantial evidence are complementary, no satisfactory definition can be proposed independent of what is considered to be direct evidence. The drafters of the pattern instruction have, in my judgment, substantially improved the instruction regarding circumstantial evidence which theretofore had usually been given and approved by courts of review although in fact, that instruction could hardly be considered a definition and it lacked the neutrality expected of instructions. See *People v. Shapiro*, 371 Ill. 234, 20 N.E.2d 284.

Initially, the question might be raised as to whether any instruction

on circumstantial evidence is required or appropriate or alternatively, whether the issue should not be left to the arguments of counsel. No instruction on direct evidence is given and none seems required. Assuming that the instruction is given primarily for the purpose of advising the jury that evidence should not be disregarded merely because it is circumstantial, then such an instruction is appropriate. The second paragraph of the instruction recognizes that the determination as to the sufficiency of circumstantial evidence may be based on facts from which conflicting inferences may be reasonably drawn and that the persuasiveness of circumstantial evidence depends on its synergistic effect considered as a whole although the effect of individual bits of evidence cannot be ignored.

Commenting on the sufficiency of circumstantial evidence, the court in *People v. Hansen,* 5 Ill.2d 535, 126 N.E.2d 243, observed, "* * * such evidence must be of such a conclusive nature as to produce a reasonable and moral certainty of guilt which so thoroughly establishes the guilt of the accused that every reasonably hypothesis of innocence is excluded." (See also *People v. Bernette,* 30 Ill.2d 359, 197 N.E.2d 436, and *People v. Marino,* 44 Ill.2d 562, 256 N.E.2d 770.) Although this rule has been stated and applied in cases where the evidence is entirely circumstantial (*People v. Lewellen,* 43 Ill.2d 74, 250 N.E.2d 651; *People v. Willson,* 401 Ill. 68, 81 N.E.2d 485, and *People v. Campagna,* 240 Ill. 378, 88 N.E. 797) and such fact was referred to by the court in its holding, the evidence was insufficient to sustain the conviction. There is no indication that the rule is inapplicable in cases where the evidence is only partly circumstantial. For instance, in *People v. Hansen,* 5 Ill.2d 535, 126 N.E.2d 243, the rule is applied where the police officers testified to seeing three persons in the jewelry store before a shoot-out took place. In *People v. Susanec,* 398 Ill. 507, 76 N.E.2d 33, where the charge was robbery, there was testimony by the victims as to the force and violence used upon them but there was only circumstantial evidence concerning whether any property was taken, *i.e.,* a watch. Nevertheless, the court applied the usual rule applicable in discussions of circumstantial evidence, finding no facts consistent with a reasonable hypothesis of defendant's innocence. See also *People v. Robinson,* 14 Ill.2d 325, 153 N.E.2d 65.

If there be sufficient evidence and reason to warrant giving the definition of circumstantial evidence then it seems the standard used in measuring and determining the sufficiency of the circumstantial evidence is just as appropriate when the evidence is partly circumstantial as when it is wholly circumstantial.

Since in the instant case the defendant's conviction rests substantially

on circumstantial evidence, I believe not only that the trial court erred in refusing to give the entire instruction but also that such error was prejudicial and requires the defendant be granted a new trial.

Lastly, I believe that by applying the foregoing standards which are discussed in connection with cases involving significant circumstantial evidence, that the evidence in this case is consistent with a reasonable hypothesis of innocence and I would reverse the judgment. It seems to be the State's position that the defendant was a lookout but the evidence in my judgment fails to demonstrate anything more than that this might have been the case. Since the defendant might not have been a lookout based on the same evidence, it seems to me that the State has failed to sustain its burden of proof in this case.